Kenneth D. Freundlich (SBN 119806)
Jonah A. Grossbardt (SBN 283584)
Hugh H. Rosenberg (SBN 360544)
**FREUNDLICH LAW, APC**
Ken@Freundlichlaw.com
Jonah@Freundlichlaw.com
Hugh@Freundlichlaw.com
16133 Ventura Blvd., Suite 645
Encino, CA 91436
Telephone: 818-377-3790
Facsimile: 310-275-5353

Walter Mosley, Esq. (SBN 244169)
wm@waltermosleyesq.com
Nathalie Meza Contreras, Esq. (SBN 322545)
nmc@waltermosleyesq.com
WALTER MOSLEY LAW
601 S. Figueroa St., Ste. #4400
Los Angeles, California 90017
Telephone: (213) 232 - 3886

*Attorneys for Defendants FUERZA REGIDA CORP., JESUS ORTIZ PAZ, SAMUEL JAIMEZ, KHRYSTIAN RAMOS and JOSE GARCIA and Counterclaimant FUERZA REGIDA CORP.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>    vs. | Case No.: **2:25-cv-10059 HDV (AJRx)**<br><br>The Honorable Hernán D. Vera<br>Courtroom 5B<br><br>**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION** |

1

FUERZA REGIDA CORP., a California corporation, JESUS ORTIZ PAZ, an individual, SAMUEL JAIMEZ, an individual, KHRYSTIAN RAMOS, an individual, JOSE GARCIA, an individual, and DOES 1 through 10, inclusive,

      Defendants,

FUERZA REGIDA CORP., a California corporation,

      Counterclaimant,

RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company, CINQ MUSIC GROUP, LLC, a California limited liability company, HUMBLE TALENT AGENCY, LLC, a California limited liability company,  and ROES 1 through 10 inclusive,

      Counterclaim Defendants.

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................6

II.   FACTUAL BACKGROUND ....................................................8

    A.    The Rancho Recording Agreement (2018-2028) ...............8

    B.    The Nature of Featured Side Artist Appearances .........9

    C.    Rancho Sues Fuerza/Fuerza Countersues ....................10

    D.    Fuerza's High-Value and Now Threatened Business Opportunities ..................................................................11

    E.    Rancho's Illegal Interference With Fuerza's Business Opportunities ..................................................................12

III.  LEGAL STANDARD .............................................................14

IV.  THE RANCHO RECORDING AGREEMENT IS UNENFORCEABLE BECAUSE IT HAS LASTED FOR MORE THAN SEVEN YEARS ...........................................14

    A.    The Statutory Period in the Rancho Recording Agreement began in 2018 and Expired in 2025 ...........15

    B.    The Settlement Agreement Did Not Restart the Clock under Labor Code 2855 .................................................15

    C.    Rancho Cannot as a Matter of Law Enforce Exclusivity in the Rancho Agreement Now .....................................17

V.   EVEN IF THE RANCHO RECORDING IS NOT UNENFORCEABLE, RANCHO'S VINDICTIVE BLOCKING OF THESE SIDE ENGAGEMENTS BREACHES THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING .............................................16

    A.    The Implied Covenant Limits the Exercise of Contractual Discretion ..................................................18

    B.    Enforcing Exclusivity Does Not Immunize Bad Faith Conduct ..........................................................................19

VI.  THIS COURT SHOULD TEMPRARILY RESTRAIN AND ENJOIN RANCHO'S ILLEGAL CONDUCT ....................20

    A.    Likelihood of Success .....................................................20

    B.    Irreparable Harm.............................................................20

    C.    Balance of Equities .........................................................21

3

MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION

**D.** **Public Interest**.......................................................................................21

**VII.** **CONCLUSION**............................................................................................22

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY
INJUNCTION**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (2011)................................20
*California Spine & Neurosurgery Inst. V. Anthem Blue Cross Life & Health Ins. Co.*, 2025 WL 2741458 (C.D. Cal. Mar. 4, 2025)...............................................11
*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342 (1992)..................................................................................18, 19
*De Havilland v. Warner Bros. Pictures*, 67 Cal. App. 2d 225 (1944)......14, 15, 16, 17
*Epic Games, Inc. v. Apple Inc.*, 493 F.Supp.3d 817 (2020)…....................................22
*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180 (2024)......20
*Foxx v. Williams*, 244 Cal. App. 2d 223 (1966)……………….................................16
*H & R Block Tax Services LLC v. Kutzman*, 681 F.Supp.2d 1248 (2010)................22
*Kendall v. Ernest Pestana, Inc.*, 40 Cal.3d 488 (1985)…....................................Passim
*Locke v. Warner Bros, Inc.*, 57 Cal.App.4th 354 (1997)…....................................18, 19
*Masters v. Avanir Pharms., Inc.*, 996 F. Supp. 2d 872 (C.D. Cal. 2014)..................14
*MCA Records, Inc. v. Newton-John*, 90 Cal. App. 3d 18 (1979)..........................16, 17
*Motown Record Corp v. Brockert*, 160 Cal. App. 3d 123 (1984)……...................16
*Ramirez v. County of San Bernardino*, 806 F.3d 1002 (2015)……..........................11
*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991)....................................................................................20
*Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166 (D. Haw. 2025)....................................14
*Saini v. International Game Technology*, 434 F. Supp. 2d 913 (D. Nev. 2006).........22
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)....................................14, 20

**Statutes**

Cal. Civ. Code § 1530………………...............................……...............................17
California Labor Code Section 2855.................................................................14, 17

**Rules**

Federal Rule of Civil Procedure 65..........................................................................14

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

# I.    **INTRODUCTION**

Fuerza Regida is a premier American regional Mexican musical artist whose songs and recordings, infused in the norteño, sierreño and corridos tumbados styes, also as merged with other urban genres, have been streamed hundreds of billions of times worldwide. Declaration of Jesus Ortiz Paz ("Paz Decl.") ¶ 1. Fuerza is Grammy nominated and has won many prestigious awards including Billboard Music Awards as well as other prestigious Latin music awards and according to Spotify was the most consumed Latin Artist in the World. Paz Decl. ¶ 2. Through the Fuerza Music Foundation, Fuerza has invested more than $400,000 in 2025 alone to support Southern California families - providing emergency housing for wildfire-displaced households, rent and food assistance to those displaced or unable to work due to the ICE raids, over $150,000 in immigrant legal aid partnerships, and scholarships for local youth at CSUSB - reflecting a sustained commitment to the working-class and immigrant communities it represents.  Id.

Fuerza's prominence made them natural partners for Major League Baseball ("MLB")  (regarding its World Basic Classic ("WBC"), the Olympics of baseball), which only occurs every four years, with music releases scheduled for Wednesday March 4, 2026) and the FIFA World Cup, also an event that only occurs every four years (with music releases scheduled for March 26, 2026). Paz Decl. ¶ 3. Fuerza has recorded songs for both the MLB and FIFA, one as a "featured artist" on a recording with Reggaeton superstar "Tainy," and the other a solo track. Id. Fuerza's relationships and opportunities with the MLB and FIFA, while anchored in the featured artist musical releases, are more robust including valuable ancillary and marketing opportunities with the MLB and with FIFA, cross-marketing and promotion with the group's Live Nation stadium tour hosted by MLB stadiums and venues for the World Cup. Paz Decl. ¶ 4.

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

Defendant Rancho Humilde LLC ("Rancho") is interfering with the MLB business relationship and Fuerza's opportunity and threatened to interfere similarly with Fuerza's FIFA World Cup opportunity even though the parties' recording agreement with Defendant Rancho Humilde LLC ("Rancho") (the "Rancho Recording Agreement") dates back to 2018, which means it is over as a violation of California's well-known seven-year rule. California Labor Code Section 2855 (agreement cannot go for more than 7 years).

Moreover, Rancho's sole stated reason for blocking these valuable opportunities is because of the parties' extant litigation and not for any legitimate business or commercial reasons. Declaration of Kenneth D. Freundlich ("Freundlich Decl.") ¶ 2-3; Exhibit A (Emails dated 2/28/2026 1:54 PM and 5:28 PM). Even if the Recording Agreement satisfied the seven-year rule which it does not, Rancho's vindictive conduct is an abject breach of the covenant of good faith and fair dealing in the Rancho Recording Agreement.

Based on the foregoing, Plaintiffs have shown they are likely to prevail on the merits of their claims that the Rancho Agreement has ended as a violation of the seven-year rule, Labor Code Section 2855, and/or that Rancho's behavior violates the covenant of good faith and fair dealing in the Rancho Recording Agreement.

Either way, these opportunities will be lost and irreplaceable and cause irreparable damage to Fuerza's public image and its relationship with its partners at the MLB, FIFA and with the reggaeton artist "Tainy" and his record label. Therefore, the Court must intervene immediately and issue an Order enjoining Rancho from engaging in this illegal behavior. Fuerza thus respectfully moves this Court for a temporary restraining order and preliminary injunction directing that Rancho refrain from exercising any rights under the parties' agreement, including blocking the Fuerza from entering into lucrative and important agreements with Major League Baseball (concerning the upcoming World Baseball Classic) which Fuerza is about to

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

1  lose, as well as an upcoming agreement with FIFA (concerning the World Cup)

2  which is lucrative and important as well, and which opportunity will be lost without

3  immediate relief.

4  **II.    FACTUAL BACKGROUND**

5      **A.    The Rancho Recording Agreement (2018-2028)**

6      Rancho signed Fuerza to an exclusive recording in 2018 by agreement dated

7  February 2, 2018, by and between Fuerza, on the one hand, and Rancho and Lumbre

8  Music, on the other hand (the "2018 Recording Agreement"). Paz Decl. ¶ 6.That

9  agreement provided for a three-year term and the delivery of seven albums within

10  that time period. The 2018 Recording Agreement was governed by California Law

11  which includes the Labor Code Section 2855 which provides that the contract could

12  not run for more than seven years. On February 2, 2021, the 2018 Recording

13  Agreement was automatically extended for another two years having a final

14  termination date of February 2, 2023.

15      Disputes arose among the parties which resulted in a settlement agreement

16  dated as of January 1, 2022 (the "2022 Settlement Agreement") which, in pertinent

17  part, provided that "**Concurrently with** the execution of [the 2022 Settlement

18  Agreement], [Rancho] and [Fuerza] shall enter into a new recording agreement…"

19  (emphasis added). Paz Decl. ¶ 6. Accordingly, Fuerza never had a "moment of

20  freedom", to negotiate and bargain with third parties. Id.

21      Instead Fuerza entered into a recording agreement dated as of December 31,

22  2021 (the "2021 Extension"), binding Fuerza to Rancho for an additional period of

23  six (6) months after the "initial commercial released in the United States of the

24  Second Album required to be delivered . . . with Rancho having options to extend the

25  term." Paz Decl. ¶ 7.

26      On August 12, 2022, Rancho further extended the term of their exclusivity

27  period with Fuerza to a date no sooner than August 22, 2027 (the "August 2022

28  

---

8

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

1  Extension"). Paz Decl. ¶ 8.Again, Fuerza had no "moment of freedom" to negotiate
2  at arms-length for his services with third parties. Id. In addition, the August 2022
3  Extension prohibited Fuerza from releasing any new material for an additional six
4  months after the expiry of the term which means that the exclusivity could extend
5  through February 2028 for a grand total of 10 consecutive unbroken years of
6  expected service by Fuerza to Rancho.

7       The 2018 Recording Agreement, as extended by the 2021 Extension and the
8  August 2022 Extension, is referred to herein as the "Rancho Recording Agreement").

9       Fuerza has delivered all albums and recordings it was required to deliver under
10  the Rancho Recording Agreement. Paz Decl. ¶ 9.

11       **B.    The Nature of Featured Side Artist Appearances**

12       The core benefit to Fuerza under the Rancho Recording Agreement is the
13  commercially reasonable exploitation of Plaintiff's recording services, including
14  industry-standard mechanisms that expand audience reach, increase demand for
15  catalog recordings, and generate royalty income. Declaration of Walter Mosley
16  ("Mosley Decl.") ¶ 2. Featured side-artist collaborations are a customary and
17  economically rational practice in the modern recording industry. Data published by
18  Spotify reflects that "six months after the collab was released, 75% of artists
19  involved saw an increase of at least 10% in overall Spotify streams across their
20  catalogs." Id.; Spotify, *Crossover Collaborations: How Artists Across Genres are*
21  *Collaborating and Finding Success*, Spotify Newsroom (May 24, 2023).[1] Academic
22  research confirms a measurable "feature artist effect," concluding that "songs
23  featuring other artists generally outperform songs without feature artists," and
24  attributing that performance to increased promotional spillover and cross-audience
25  exposure. See Id.;, X. Smith & Y. Wang, *The Feature Artist Effect in the U.S. Music*
26

27  [1] https://newsroom.spotify.com/2023-05-24/crossover-collaborations-genre-collabs-streaming-data-spotify/

28

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

1 *Industry*, J. Cultural Econ. (2020). Marketing scholarship similarly finds that "songs

2 featuring other artists have a greater likelihood of making it into the top 10,"

3 explaining that collaborations allow artists to combine audiences while maintaining

4 distinct brand positioning. See Id.; R. F. L. et al., *Brand Spillovers in Music*

5 *Collaborations*, Marketing Letters (2018).

6       Industry trade organizations likewise describe featured appearances as

7 standard collaborative practice. *See* Mosley Decl. ¶ 3; Broadcast Music, Inc., *Duets*

8 *and Featured Artists: The Hot Trend in Recordings* (BMI.com) (describing featured

9 artists as those who "make a guest appearance on another artist's recording to create

10 a collaboration" and that "in addition to the creative rewards that result when artists

11 from different genres collaborate, these recordings… expos[e] the artists to more

12 potential fans").[2] In short, featured collaborations are not ancillary; they are a core

13 commercial vehicle for audience growth, catalog monetization, and brand expansion.

14 Id. Preventing such customary collaborations materially impairs the commercially

15 reasonable exploitation that forms the central economic purpose of the Rancho

16 Recording Agreement. Id.

17     **C.**   **Rancho Sues Fuerza/Fuerza Countersues**

18       Serious disputes have erupted between Rancho and Fuerza culminating in

19 Rancho filing a lawsuit on September 11, 2025, in California Superior Court, *Rancho*

20 *Humilde Entertainment LLC v. Fuerza Regida Corp. et al,* LASC Case No.

21 25STCV26631 (the "State Action"), seeking damages from Fuerza for alleged

22 breaches of the Rancho Recording Agreement. Fuerza filed its answer and

23 counterclaim alleging breaches by Rancho totaling Tens of Millions of Dollars. On

24 October 20, 2025, Fuerza removed the action to the Central District of California,

25 *Rancho Humilde Entertainment LLC v. Fuerza Regida Corp, et al.,* and related cross

26

27 [2] https://www.bmi.com/news/entry/duets-and-featured-artists-the-hot-trend-in-recordings

28

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

claims Case No. 2:25-cv-10059 HDV (AJRx) (the "Federal Action"), on the basis of
subject matter (copyright) and pendant jurisdiction.

Fuerza filed its First Amended Answer, Affirmative Defenses and
Counterclaims on March 2, 2026 (Doc. No. 35) which includes a claim for
declaratory relief under California Labor Code Section 2855, and a claim for breach
of the implied covenant of good faith and fair dealing. This amendment is permitted
as of right because it was filed within twenty-one days of Rancho's answer to
Fuerza's Answer and Counterclaims (Doc. No. 31 filed on February 10, 2026) which
was permitted after stipulation and Court Order (Doc. No. 21). *Ramirez v. County of
San Bernardino*, 806 F.3d 1002 (2015) (Ninth Circuit reversed lower court when it
did not permit such an amendment). *See also California Spine & Neurosurgery Inst.
V. Anthem Blue Cross Life & Health Ins. Co.*, 2025 WL 2741458, *1-2 (C.D. Cal.
Mar. 4, 2025).

The matter is pending in Federal Court before Judge Hernán D Vera.

**D.** **Fuerza's High-Value and Now Threatened Business Opportunities**
**Major League Baseball**

Given its high profile in the Mexican American community, it is not surprising
that Major League Baseball ("MLB") has sought Fuerza's leader Jesus Oritz Paz to
throw out the first ball at the USA-Mexico ballgame in the world baseball classic
("WB") scheduled to take place on March 9, 2026. Paz Decl. ¶ 5.This appearance is
part of a robust agreement Fuerza struck with the MLB which also covered Fuerza's
national tour of MLB ballparks with MLB promotional tie-ins, and the release of a
recording where Fuerza is the "featured side artist" on a new recording by Reggaeton
superstar "Tainy" to be released in conjunction with a WBC album on March 4,
2026. Id. This is an important collaboration for Fuerza as it is a fusion of regional
Mexican sounds with reggaeton and with Bad Bunny's historic Super Bowl

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY
INJUNCTION**

1  performance activating the market for reggaeton, this collaboration represents a huge
2  opportunity for Fuerza. Paz Decl. ¶ 3.
3  **FIFA**
4      Fuerza has also been approached by FIFA in connection with the upcoming
5  World Cup in the United States, to among other things, record with "Tainy" a second
6  song as a featured side artist. FIFA is likely to have other ancillary opportunities
7  Fuerza.
8      While the MLB and FIFA opportunities are the two extant opportunities that
9  are the subject of this Ex Parte Application, it is anticipated that if the Court does not
10 act now to enjoin Rancho's illegal behavior, Rancho will continue to prevent Fuerza
11 from realizing the value of these business opportunities.
12     **E.**    **Rancho's Illegal Interference With Fuerza's Business Opportunities**
13     Rancho has made no secret of its intent to shut down Fuerza's business
14 opportunities solely because there is litigation and not for any business or
15 commercial purpose. Indeed, Rancho's own counsel Michael Trauben of Singh
16 Singh and Trauben wrote in email:
17         "Rancho is exercising its express contractual and legal rights in light of
18         the ongoing litigation between the parties. As you know, the scope of
19         rights, authority, and approvals relating to Fuerza Regida, including the
20         exclusivity provisions, are central issues in that dispute. Under these
21         circumstances, Rancho is not obligated to consent to new releases,
22         features, or exploitations."
23 *See*, Freundlich Decl. ¶ 2, Exhibit A (Email dated 2/28/2026 1:54 PM).
24     Trauben doubled down later in the same string stating:
25 "You are effectively asking Rancho to surrender disputed rights mid-litigation so
26 your client can proceed with third-party opportunities."
27 Freundlich Decl. ¶3, Exhibit A (Email dated 2/28/2026 5:28 PM).
28

12

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

Sony Music Entertainment, Inc. ("Sony") is the distributor of Fuerza recordings that have been released during the term of Fuerza's recording agreement with Rancho Humilde, LLC. Declaration of Gustavo Lopez ("Lopez Decl.") ¶ 2. Sony has approved the recent opportunities that Fuerza has been presented with concerning the MLB and FIFA but without Rancho's approval Sony has withheld its formal consent to the MLB and FIFA placing Fuerza's opportunities in jeopardy. Id.

Then Jimmy Humilde himself made his motives perfectly clear when he told Sony Executives that he will not approve any releases from Fuerza until the pending litigation is settled, which includes Fuerza extending even further the already 8 year term of its engagement. Lopez Decl. ¶ 3. Sony agrees that the approach is incorrect and does not agree in any way with it but they are a hostage to the forced hold up and have had their hands tied by Jimmy Humilde. Id.

Humilde has not stated one viable business or commercial reason for his indiscriminate disapproval to the Sony executive. Lopez Decl. ¶ 4. Mr. Humilde is using a hammer on his so-called "exclusivity" in bad faith to hang over Fuerza's head until they succumb to his unfair proposal to resolve this litigation. Id.

Rancho's illegal attempt to weaponize its exclusivity provision runs afoul of the covenant of good faith and fair dealing. Where a contract confers on one party a discretionary power affecting the rights of another, that discretion much be exercised in good faith and in accordance with fair dealing. *Kendall v. Ernest Pestana, Inc.*, 40 Cal.3d 488, 500 (1985). The implied covenant requires that contractual discretion be exercised for purposes related to the provision's protective function; withholding consent solely to capture economic advantage beyond the original bargain is not commercially reasonable. *See Id.* at 500-01, 504. Rancho's conduct here (even assuming *arguendo* that the exclusivity provision is still enforceable despite the seven-year rule) (a) confers no legitimate performance protection, (b) is contrary even to Rancho's own economic interest, and (c) is deployed to obtain litigation

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

leverage. This is precisely what the implied covenant prohibits – using a contractual right not to protect the interest the provision was designed to serve, but to "get more than [Rancho] bargained for." *Id.* at 504.

## III.    LEGAL STANDARD

Federal courts apply well-established standards for granting temporary restraining orders (TROs) and preliminary injunctions under Federal Rule of Civil Procedure 65. The standard for obtaining a temporary restraining order (TRO) or preliminary injunction (PI) in federal court generally requires that the movant demonstrate (1) a likelihood of success on the merits, (2) that irreparable harm will occur in the absence of relief, (3) that the balance of hardships tips in the movant's favor, and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19 (2008). The TRO standard is essentially the same as for a PI, with the additional requirement under Federal Rule of Civil Procedure 65(b) that immediate and irreparable injury will result before the adverse party can be heard. *Rico-Tapia v. Smith,* 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025). These standards are procedural and governed by federal law, even when the substantive right arises under state law. *Masters v. Avanir Pharms., Inc.* 996 F. Supp. 2d 872, 878 n.3 (C.D. Cal. 2014).

## IV.    THE RANCHO RECORDING AGREEMENT IS UNENFORCEABLE BECAUSE IT HAS LASTED FOR MORE THAN SEVEN YEARS

California Labor Code section 2855(a) provides that a contract to render personal services may not be enforced against the employee beyond seven years from the commencement of service under it. In the seminal case of *De Havilland v. Warner Bros. Pictures*, 67 Cal. App. 2d 225 (1944), which involved the acting service of Olivia de Havilland, the court held: that (1) the statute measures time from commencement of service, (2) suspension or tolling does not extend the statutory limit, and (3) the statute is designed to prevent long term restraints on artistic labor.

This statutory limitation is substantive and reflects the strong public policy of the State of California that employment should not last more than seven years without an opportunity to be a "free agent" on the market.

**A. The Statutory Period in the Rancho Recording Agreement began in 2018 and Expired in 2025**

Fuerza began rendering services to Rancho under the 2018 Recording Agreement in 2018. After extensions in 2021 (the 2021 Extension) and again in August 2022 (the August 2022 Extension), the Rancho Recording Agreement lasted through 2025 and Rancho seeks to enforce its exclusivity today in March 2026.

However, by the passage of time, the Rancho Recording Agreement has expired.

**B. The Settlement Agreement Did Not Restart the Clock under Labor Code 2855**

The Court in *De Havilland* found that a restart of the statutory period requires a complete termination of the prior agreement together with a genuine freedom to contract. See *De Havilland v. Warner Bros. Pictures, Inc.*, 67 Cal. App. 2d 225, 236 (1944).

The January 1, 2022, Settlement and Release Agreement reflects no such break. It does not mark the arm's-length formation of a new personal services relationship. Instead, it memorializes the resolution of disputes within an ongoing exclusive recording relationship that began in 2018. The Recitals expressly acknowledge that "disputes have arisen … regarding the Recording Agreement … and monies owed to Artist" and that the parties sought "to avoid the expense and uncertainty that is inherent in litigation." The Settlement required Rancho to render "full, complete and accurate accountings" of royalties and recoupable recording costs "from inception," confirming that the restructuring addressed alleged underpayments and contractual breaches under the existing 2018 Recording Agreement, not the

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

1  dissolution of the relationship so that the Artist could re-enter the marketplace free of
2  restraint.

3      Section 2855 measures seven years from the "commencement of service," not
4  from subsequent restructurings of the same relationship. *De Havilland*, 67 Cal. App.
5  2d at 236. In enforcing the statutory protections afforded to performers, California
6  Courts have consistently looked to the substance of the parties' relationship rather
7  than the formal labels attached to it. See *MCA Records, Inc. v. Newton-John*, 90 Cal.
8  App. 3d 18, 23-25 (1979); *Foxx v. Williams,* 244 Cal. App. 2d 223, 241-42 (1966);
9  *Motown Record Corp v. Brockert*, 160 Cal. App. 3d 123, 132 (1984). Here, the
10 Settlement did not afford Fuerza a moment of contractual freedom. It terminated the
11 prior "Term" only concurrently with entry into a "New Recording Agreement," and
12 that new agreement was executed before the prior termination became effective.
13 There was no hiatus in services, no opportunity to shop the marketplace, and no
14 arms-length renegotiation following liberation from exclusivity. Instead of paying
15 damages for alleged breaches, Rancho restructured forward-looking economic
16 participation while preserving uninterrupted exclusivity. The release extends to
17 claims "arising out of … any breach … under the Recording Agreement,"
18 underscoring that the Settlement functioned as a litigation-avoidance mechanism, not
19 as a fresh commencement of service.

20     Allowing a label to reset §2855's seven-year clock through such a settlement
21 would defeat the statute's protective purpose. As *De Havilland* recognized, § 2855
22 exists to prevent prolonged restraint on artistic labor through contractual extension
23 devices. 67 Cal. App. 2d at 236. A party cannot evade that mandate by breaching a
24 contract, renegotiating economics under dispute pressure, and labeling the result a
25 "new" agreement. In substance, the 2021–2022 documents represent a settlement
26 within a continuous exclusive services relationship that began on February 2, 2018.
27 Under California law, continuity of service—not the drafting label placed on a
28

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY
INJUNCTION**

restructuring—governs the § 2855 analysis.[3] Because Fuerza's exclusive recording services commenced in 2018 and continued without interruption through the Settlement and the so-called "New Recording Agreement," the seven-year statutory period runs from 2018 and expired in February 2025.

**C.** **Rancho Cannot as a Matter of Law Enforce Exclusivity in the Rancho Agreement Now**

California Labor Code Section 2855 (a)prohibits enforcement of personal services contracts beyond seven years from the commencement of service. See Cal. Lab. Code  2855(a); De Havilland v. Warner Bros. Pictures, Inc., 67 Cal.App.2d 225, 236 (1944). Here, the Rancho Agreement commenced in 2018, making the seven-year period expire on February 2, 2025. Rancho's attempt to restrain Fuerza's activities in 2026-after expiration of the statutory period-violates Section 2855 and the public policy against involuntary servitude. See id. See also *MCA Records, Inc. v. Newton-John*, 90 Cal. App. 3d 18, 23–25 (1979) (applying § 2855 and holding recording contract unenforceable beyond seven-year period).[4]

_____

[3] Rancho may contend that the 2022 Settlement and subsequent Recording Agreement constituted a novation that restarted the seven-year period. A novation, however, requires the extinguishment of the prior obligation and the substitution of a new one entered into by parties free to contract. Cal. Civ. Code § 1530. The record reflects no interruption of services, no release into the marketplace, and no period during which Fuerza was free to negotiate at arm's length. The Settlement terminated the prior "Term" only concurrently with execution of a successor exclusive agreement. Under § 2855, courts measure from the commencement and continuity of service, not from contractual relabeling. *See De Havilland v. Warner Bros. Pictures, Inc.*, 67 Cal. App. 2d 225, 236 (1944). Nor does Labor Code § 2855(b) extend exclusivity. Subsection (b) permits a damages remedy where required phonorecords remain undelivered within the seven-year period; it does not authorize enforcement beyond that period. It is undisputed that Fuerza delivered all albums required under the Rancho Recording Agreement. See Paz Decl ¶ 9_Section 2855(b) therefore does not apply.

[4] It should be noted that Rancho continues its recurring scheme of statue avoidance and royalty payment avoidance. As detailed in the Mosley Decl., Rancho failed to render accurate royalty accountings and to pay royalties owed under the 2018

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

**V.    EVEN IF THE RANCHO RECORDING IS NOT UNENFORCEABLE, RANCHO'S VINDICTIVE BLOCKING OF THESE SIDE ENGAGEMENTS BREACHES THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

California law implies in every contract a covenant of good faith and fair dealing, under which neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Kendall*, 40 Cal.3d at 500. Where a contract confers on one party a discretionary power affecting the rights of another, that discretion must be exercised honestly and in good faith and a party's subjective dissatisfaction must be bona fide and genuine. *Locke v. Warner Bros, Inc.*, 57 Cal.App.4th 354, 363-65 (1997).

While the implied covenant cannot be read to prohibit a party from doing that which is expressly permitted by the agreement, *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,* 2 Cal.4th 342, 374 (1992), the covenant "finds particular application in situations where on party is invested with a discretionary power affecting the rights of another' and requires that "[s]uch power must be exercised in good faith." *Id*. at 372.

**A.    The Implied Covenant Limits the Exercise of Contractual Discretion**

California courts have repeatedly held that a party vested with discretion breaches the implied covenant if it acts arbitrarily or with an improper motive. *See Locke,* 57 Cal.App.4th at 367–68 (studio may have breached implied covenant by exercising discretionary development rights in bad faith).

---

Recording Agreement, leading to the 2022 Settlement, which itself required accountings "from inception." Mosley Decl. ¶ 5.

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

**B.    Enforcing Exclusivity Does Not Immunize Bad Faith Conduct**

Fuerza does not dispute that the Rancho Recording Agreement conveyed exclusive recording rights to Rancho. But simply because Defendant has that right does not mean it may exercise it in bad faith.

In *Carma*, *supra*, the California Supreme Court held that a landlord's exercise of an express termination right did not violate the implied covenant because the challenged conduct was "precisely what [was] contemplated" by the contract and "clearly within the parties' reasonable expectations."  2 Cal.4th at 362, 374.

Here, by contrast, the Agreement does not grant Defendant the right to deny approval for the purpose of economic coercion. It only contemplates commercial exploitation of Plaintiff's services for legitimate business reasons such as scheduling conflicts, brand protection, or release strategy. Here, Defendant admits it acted for reasons unrelated to any business or commercial purpose and solely to gain unfair advantage in pending litigation. See Freundlich Decl. ¶2-3.

California law distinguishes between exercising a contract right as contemplated and weaponizing that right to undermine the agreement's economic foundation. *Locke*, 57 Cal.App.4th at 367. Here the industry custom is to permit these featured performances as brand enhancers when they do not otherwise conflict with schedule. Mosley Decl. ¶ 4.

Defendant is systematically blocking exposure opportunities to depress leverage and restrict Plaintiff's career mobility. While industry custom does not override express contract terms, it informs the parties' commercial expectations. *See Kendall*, 40 Cal.3d at 500-01 (covenant requires that discretionary power be exercised in accordance with commercially reasonable standards); *Locke*, 57 Cal.App.4th at 364-65 (value of agreement was not merely guaranteed payments but "the opportunity to promote and enhance a career.") This weaponization by Rancho is illegal and must be enjoined.

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

1    **VI.    THIS COURT SHOULD TEMPORARILY RESTRAIN AND ENJOIN**
2    **RANCHO'S ILLEGAL CONDUCT**

3        **A.    Likelihood of Success**

4        The likelihood of success on the merits is the most critical factor, though
5    courts may apply a sliding scale balancing test where a stronger showing of one
6    factor may compensate for a weaker showing of others. *Alliance for the Wild*
7    *Rockies v. Cottrell*, 632 F.3d 1127 (2011) (internal quotation marks omitted)
8    ("serious questions going to the merits and a hardship balance that tips sharply
9    toward the plaintiff can support issuance of an injunction" so long as the plaintiff
10    also shows that there is a likelihood of irreparable injury and that the injunction is in
11    the public interest.). *See also Flathead-Lolo-Bitterroot Citizen Task Force v.*
12    *Montana*, 98 F.4th 1180 (2024) (same).

13        Here, as set forth in Sections IV and V above, Fuerza has overwhelmingly
14    provided its likelihood to succeed on one or both prongs of its motion: (1) that
15    California Labor Code Section 2855 bars enforcement of the Rancho Agreement
16    beyond seven years from 2018, and (2) that Rancho breached the implied covenant
17    of good faith and fair dealing by exercising its approval rights in bad faith to gain
18    litigation leverage rather than for legitimate commercial purposes.

19        **B.    Irreparable Harm**

20        Irreparable harm must be likely, not speculative. *Winter v. Natural Resources*
21    *Defense Counsel, Inc.* 555 U.S. 7,22 (2008). Injunctive relief is appropriate where
22    damages are inadequate to compensate for intangible injuries, such as loss of
23    goodwill, reputation, or unique business opportunities. *See Rent-A-Ctr., Inc. v.*
24    *Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

25        Here, Fuerza faces irreparable harm in the form of: (1) loss of career
26    momentum in the time-sensitive music industry where relevance depends on
27    continuous public engagement; (2) damage to brand positioning and market

28

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR**
**TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY**
**INJUNCTION**

relevance during peak commercial viability; and (3) lost collaborative opportunities with major brands and artists (including MLB, FIFA, and producer "Tainy") that cannot be recreated or compensated through monetary damages. Paz Decl. ¶ 10.

Missed collaborations during peak visibility cannot be retroactively monetized. Paz. Decl ¶ 11. Monetary damages cannot fully restore lost cultural capital or reputations. *Rent-A-Ctr.*, 944 F.2d at 603. (Federal courts recognize that harm to goodwill and competitive positioning constitutes irreparable injury).

**C.    Balance of Equities**

The equities strongly favor Fuerza. Fuerza seeks only to enforce California Labor Code Section 2855 which is intended to benefit Fuerza or to prevent bad-faith denials, not to eliminate Rancho's approval right entirely. The requested injunction merely requires Defendant to exercise discretion in good faith. By contrast, absent relief, Plaintiff's career trajectory may suffer irreversible damage.

Rancho retains the ability to pursue claims for alleged past breaches. The requested relief affects only prospective enforcement. The equities favor permitting Fuerza to pursue his career free of unlawful restraint.

**D.    Public Interest**

To begin with, California Labor Code Section 2855 is stated to be in the public interest, its very purpose is to protect contracting parties like Fuerza from being bound beyond seven years to a services agreement. The public interest is further served by enforcement of the implied covenant of good faith and fair dealing, which ensures that contractual discretion is exercised in accordance with commercially reasonable standards. *See Kendall*, 40 Cal.3d at 500. Equitable relief here does not undermine exclusivity in recording agreements. It reinforces the principle that contractual discretion must be exercised honestly and consistent with the agreement's commercial purpose.

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

Courts have consistently recognized a general public interest in contract enforcement. *H & R Block Tax Services LLC v. Kutzman*, 681 F.Supp.2d 1248 (2010), ( "the public has an interest in valid contracts being upheld"); *see also Saini v. International Game Technology,* 434 F. Supp. 2d 913, 924 (D. Nev. 2006) (granting preliminary injunction after finding successful demonstration of breach of the implied covenant, and noting "where the terms of a contract are literally complied with but one party to the contract deliberately countervenes [sic] the intention and spirit of the contract, that contravention may be a breach of the implied covenant.") (internal quotation marks omitted). Enforcement of the implied covenant of good faith and fair dealing advances the same public interest in preserving the integrity of contractual relationships.

Moreover, the effect on third parties, here the MLB, FIFA, its spectators and customers, and "Tainy" also makes this case in the public interest. *See Epic Games, Inc. v. Apple Inc.*, 493 F.Supp.3d 817 (2020).

## VII.  CONCLUSION

For the reasons set forth hereinabove, this Court should grant declaratory and prospective injunctive relief and permit Fuerza to move forward unencumbered in his career, while reserving any past breach issues for subsequent determination.

DATED:      March 2, 2026          Respectfully submitted,

FREUNDLICH LAW, APC


BY: */s/ Kenneth D. Freundlich*
Kenneth D. Freundlich (SBN: 119806)
Jonah A. Grossbardt (SBN 283584)
Hugh H. Rosenberg (SBN 360544)
*Attorneys for Defendants Fuerza Regida Corp.*
*Jesus Ortiz Paz, Samuel Jaimez, Khrystian*
*Ramos And Jose Garcia*

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**

1  DATED: March 2, 2026

2                                          MOSLEY AND ASSOCIATES

3

4                              BY: */s/ Walter Mosley*
                                   Walter Mosley, Esq, (SBN: 244169)
5                                  *Co-Counsel for Defendants Fuerza Regida*
                                   *Corp. Jesus Ortiz Paz, Samuel Jaimez,*
6                                  *Khrystian Ramos And Jose Garcia*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF LAW ISO NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR PRELIMINARY INJUNCTION**