**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS** (SBN: 310209)
  trichards@singhtraubenlaw.com
**MICHAEL A. TRAUBEN** (SBN: 277557)
  mtrauben@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Plaintiff/Counter-Defendant*
RANCHO HUMILDE ENTERTAINMENT, LLC *and*
*Third-Party Defendant* HUMBLE TALENT AGENCY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company,<br><br>       Plaintiff,<br><br>  v.<br><br>FUERZA REGIDA CORP., a California corporation, JESUS ORTIZ PAZ, an individual, SAMUEL JAIMEZ, an individual, KHRYSTIAN RAMOS, an individual, JOSE GARCIA, an individual, and DOES 1 through 10, inclusive,<br><br>       Defendants. | ) Case No.: **2:25-cv-10059 HDV (AJRx)**<br>)<br>) The Honorable Hernán D. Vera<br>) Courtroom 5B<br>)<br>) **PLAINTIFF/COUNTER-DEFENDANT**<br>) **RANCHO HUMILDE**<br>) **ENTERTAINMENT, LLC'S**<br>) **OPPOSITION TO DEFENDANTS'** *EX*<br>) *PARTE* **APPLICATION FOR**<br>) **TEMPORARY RESTRAINING ORDER**<br>) **AND ORDER FOR PRELIMINARY**<br>) **INJUNCTION [ECF 36]**<br>)<br>) **[Declarations of Jaime Alejandre and**<br>) **Michael A. Trauben filed concurrently**<br>) **herewith]**<br>)<br>) ACTION REMOVED:    October 20, 2025<br>) TRIAL DATE:    None Set<br>)<br>)<br>)<br>) |

SINGH,
SINGH &
TRAUBEN,
LLP

FUERZA REGIDA CORP., a California
corporation,                                    )
                                                )
              Cross-Complainant,                )
                                                )
       v.                                       )
                                                )
RANCHO HUMILDE                                  )
ENTERTAINMENT, LLC, a California                )
limited liability company, CINQ MUSIC           )
GROUP, LLC, a California limited                )
liability company, HUMBLE TALENT                )
AGENCY, LLC, a California limited               )
liability company, and ROES 1                   )
through 10 inclusive,                           )
                                                )
              Cross-Defendants.                 )
_____)

OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO.: 2:25-CV-10059 HDV (AJRx)

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   DEFENDANTS SEEK A DISFAVORED MANDATORY INJUNCTION AND
      MUST SATISFY A HEIGHTENED STANDARD ................................................. 4

III.  DEFENDANTS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS
      ON THE MERITS ............................................................................. 6

      A.    Defendants' Labor Code § 2855 Claim is Meritless and Cannot Support
            "Emergency" Relief ...................................................................... 6

      B.    Defendants' Implied Covenant Theory is a Transparent Attempt to Override
            Express Contractual Rights ............................................................ 9

IV.   DEFENDANTS CANNOT DEMONSTRATE IRREPARABLE HARM.......... 11

V.    ANY RELIEF, IF GRANTED AT ALL, MUST BE SECURED BY A
      SUBSTANTIAL BOND ...................................................................... 13

VI.   CONCLUSION ............................................................................... 14

SINGH,
SINGH &
TRAUBEN,
LLP

# TABLE OF AUTHORITIES

## FEDERAL CASES

**U.S. Supreme Court**

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) .............. 4, 11, 16

**U.S. Circuit Court**

*Anderson v. U.S.*, 612 F.2d 1112 (9th Cir. 1980) ......................................... 2, 5

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
    571 F.3d 873 (9th Cir. 2009) ............................................................. 2, 5

*Martinez v. Mathews*, 544 F.2d 1233 (5th Cir. 1976)..................................... 2

**U.S. District Court**

*Clune v. Publishers' Ass'n of N.Y. City*, 214 F.Supp. 520 (S.D.N.Y. 1963)................... 2

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) ....... 14

*VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F.Supp. 773 (S.D.N.Y. 1969)............... 4

## STATE COURT CASES

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*
    2 Cal. 4th 342 (1992) .......................................................................... 4, 9

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317 (2000)......................................... 4, 9

## RULES AND CODES

California Labor Code § 2855 ......................................................... 1, 3, 5-8, 15

Federal Rule of Civil Procedure 65(c) ..................................................... 13-14

SINGH,
SINGH &
TRAUBEN,
LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff/counter-defendant Rancho Humilde Entertainment, LLC ("**Rancho**") respectfully submits this memorandum of points and authorities in opposition to the "emergency" *ex parte* application for temporary restraining order and order for preliminary injunction filed by defendants Fuerza Regida Corp. ("**FRC**"), Jesus Ortiz Paz ("**Paz**"), Samuel Jaimez ("**Jaimez**"), Khrystian Ramos ("**Ramos**"), and Jose Garcia ("**Garcia**") (collectively, "**Defendants**").

## I.    INTRODUCTION

Defendants' *ex parte* application seeks extraordinary mandatory relief that would compel Rancho Humilde Entertainment, LLC ("**Rancho**") to surrender core, bargained-for contractual approval and exclusivity rights in the middle of active litigation. Improperly framed as an "emergency" request for a temporary restraining order, the relief requested is not preservation of the status quo. Rather, it is a mandatory injunction requiring Rancho to grant approvals for featured artist collaborations and to refrain from exercising its contractual rights embodied in express provisions within the parties' operative agreements (including a 2021 Exclusive Recording and Participation Agreement as amended in 2022). Such relief is highly disfavored, subject to heightened scrutiny, and plainly unwarranted on this record.

The dispute before the Court concerns the scope and enforceability of exclusivity and approval rights under a series of written agreements executed in 2021 and 2022, including a restructured Exclusive Recording and Participation Agreement and a First Amendment integrating a global Sony distribution arrangement supported by substantial new consideration. Defendants now contend, for the first time, that these agreements are somehow unenforceable under Labor Code § 2855 and, alternatively, that Rancho's exercise of express approval rights constitutes bad faith. Both theories are baseless (with Defendants having just contrived their § 2855 contention) and, at most, involve heavily disputed legal and factual questions that cannot be resolved on an *ex parte* record.

This Application is particularly improper because it seeks to alter the parties' contractual relationship before those threshold issues are adjudicated. Defendants' proposed order would restrain Rancho "from exercising, asserting, or enforcing any rights or remedies under the parties' Agreement" [ECF 36-11 at 3], including its right to withhold consent to featured appearances and third-party exploitations. That is the very definition of a mandatory injunction. Courts grant such relief only upon a clear showing of entitlement and a demonstration of extreme or very serious damage. See *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). Indeed, a mandatory injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1980), quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* at 1115, quoting *Clune v. Publishers' Ass'n of N.Y. City*, 214 F.Supp. 520, 531 (S.D.N.Y. 1963). Defendants cannot come close to making either showing.

Defendants likewise fail to establish irreparable harm. The injuries they allege consist entirely of economic losses arising from Rancho's withholding of approvals for certain recordings and promotional collaborations. These include alleged lost royalties, diminished marketing value, and foregone promotional opportunities. Even accepting Defendants' assertions at face value, such harms are readily calculable and fully compensable through monetary damages. It is well settled that purely economic injury, no matter how significant, does not constitute irreparable harm sufficient to justify the extraordinary remedy of emergency injunctive relief.

Moreover, the asserted urgency is entirely self-created. Defendants pursued the purported opportunities with full knowledge that the parties' exclusivity and approval rights are central issues in this pending litigation. Rancho did not engage in concealment or surprise. To the contrary, it expressly stated it would preserve its contractual rights while

SINGH, SINGH & TRAUBEN, LLP

those issues remain before the Court. *See* Declaration of Jaime Alejandre ("**Alejandre Decl.**") ¶ 12. Defendants' decision to proceed without securing consent does not convert a contract dispute into an extraordinary emergency warranting *ex parte* intervention.

Defendants likewise cannot demonstrate any likelihood of success on the merits. Their invocation of Labor Code § 2855 deliberately overlooks the subsequent agreements the parties executed in December 2021 and August 2022. Those agreements fundamentally restructured the parties' relationship, incorporated a global distribution arrangement with Sony, modified royalty participation, and introduced new and substantial economic consideration along with fresh obligations. Far from the newfound characterization Defendants now advance, the original 2018 Agreement was expressly terminated by the 2022 Settlement Agreement. In its stead, the parties entered into an entirely new Exclusive Recording and Participation Agreement dated December 30, 2021, supported by new consideration that included the integration of the Sony Distribution Agreement. At minimum, the scope and enforceability of the 2021 Agreement, as amended in 2022, constitute central disputed issues in this litigation and cannot properly be summarily resolved on an *ex parte* basis. (Alejandre Decl. ¶ 10).

Defendants' implied covenant of good faith and fair dealing theory fares no better. California law does not permit the implied covenant of good faith and fair dealing to override or rewrite express contractual discretion. As the California Supreme Court has underscored:

> "The general rule [regarding the covenant of good faith] is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing. ... [¶] This is in accord with the general principle that, in interpreting a contract 'an implication ... should not be made when the contrary is indicated in clear and express words.' 3 Corbin, Contracts, § 564, p. 298 (1960). . . . [¶] As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct. And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach."

SINGH,
SINGH &
TRAUBEN,
LLP

3

OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
**CASE NO.: 2:25-CV-10059 HDV (AJRx)**

1   *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992),

2   quoting *VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F.Supp. 773, 777-778 (S.D.N.Y.

3   1969); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 349-50 (2000) (covenant of good faith

4   and fair dealing cannot impose substantive terms and conditions beyond those to which the

5   parties actually agreed). Exercising a bargained for approval right during active litigation

6   over the scope of that right does not constitute bad faith. Rather, it constitutes the prudent

7   preservation of disputed contractual interests.

8         The balance of the equities and the public interest likewise favor denial of the

9   requested relief. Granting the Application would impermissibly rewrite the parties'

10  agreements and strip Rancho of its express contractual protections before the merits can be

11  adjudicated. Conversely, denying this alleged "emergency" relief preserves the status quo,

12  permits the case to proceed in an orderly fashion through discovery, and leaves Defendants

13  free to pursue any monetary damages they contend arise from the alleged breaches.

14        In short, Defendants seek mandatory injunctive relief that would compel Rancho to

15  relinquish disputed contractual rights on the basis of highly contested legal theories (one

16  of which Defendants just contrived) and purely economic harm. Such relief far exceeds the

17  proper function of a temporary restraining order. Because Defendants cannot satisfy the

18  demanding standards established in *Winter v. Natural Resources Defense Council, Inc.*,

19  555 U.S. 7 (2008), and because the relief sought would improperly alter the status quo, the

20  Application must be denied. See *Winter*, 555 U.S. at 22 (a plaintiff seeking preliminary

21  relief must demonstrate that irreparable injury is likely in the absence of an injunction).

## II.   DEFENDANTS SEEK A DISFAVORED MANDATORY INJUNCTION AND MUST SATISFY A HEIGHTENED STANDARD

23        Although Defendants have styled their application as one for a temporary restraining

24  order, they do not seek merely to preserve the status quo. They seek to alter it

25  fundamentally. Specifically, Defendants request an order restraining Rancho from

26  exercising, asserting, or enforcing any rights or remedies under the parties' agreements,

27  including its express contractual right to approve or withhold consent to featured

SINGH,
SINGH &
TRAUBEN,
LLP

4

OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
**CASE NO.: 2:25-CV-10059 HDV (AJRx)**

performances and third-party exploitations. In substance, they seek an order compelling Rancho to grant such approvals and to suspend enforcement of the exclusivity provisions while this litigation remains pending. That relief constitutes a mandatory injunction.

The distinction is critical. Prohibitory injunctions maintain the last uncontested status quo. Mandatory injunctions, by contrast, compel affirmative action or materially change the existing legal relationship between the parties. Federal courts have repeatedly held that mandatory injunctions are particularly disfavored and subject to a heightened standard of review. <u>See</u> *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1980); *Marlyn Nutraceuticals*, 571 F.3d at 879. Such relief may issue only upon a clear showing that the moving party's right to relief is clear and that the facts and law clearly favor the applicant. Courts apply this heightened scrutiny with particular caution where, as here, the requested relief would compel one party to perform disputed contractual obligations during active litigation over the very rights at issue.

Here, the status quo is that Rancho possesses and has long exercised contractual approval and exclusivity rights under the operative agreements, which rights are central issues in this litigation. Defendants nevertheless seek an order that would suspend those rights and compel Rancho to grant consent before the Court has adjudicated their enforceability. Such relief would not preserve existing conditions. It would fundamentally reorder them.

Moreover, mandatory injunctive relief is especially inappropriate in this case, where the requested order turns on sharply disputed questions of contract interpretation, statutory application, and novation. Defendants' invocation of Labor Code section 2855 requires the Court to disregard how the parties' subsequent agreements executed in 2021 and 2022 created an entirely new contractual relationship supported by new consideration. Their implied covenant theory similarly depends on whether Rancho's exercise of express contractual discretion is permissible under the agreements. These are not settled questions

SINGH,
SINGH &
TRAUBEN,
LLP

5
OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO.: 2:25-CV-10059 HDV (AJRx)

of law applied to undisputed facts. Rather, they are vigorously contested legal and factual issues that demand full briefing, discovery, and adjudication on the merits.

*Ex parte* mandatory relief is reserved for truly extraordinary circumstances in which the movant's entitlement is clear and immediate harm is indisputable. Defendants cannot satisfy that demanding standard. They seek to compel the surrender of bargained-for contractual protections on the basis of legal theories that are, at minimum, highly debatable. Where, as here, substantial questions surround the validity and scope of the underlying contractual rights, mandatory injunctive relief is improper as a matter of law.

Because Defendants request relief that would materially alter the parties' contractual relationship and compel affirmative conduct, they must satisfy the heightened standard applicable to mandatory injunctions. They have not done so and cannot do so.

## III. DEFENDANTS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS

Defendants' application for emergency relief rests on two asserted grounds: first, that the parties' recording agreement is unenforceable under California Labor Code § 2855, and second, that Rancho's exercise of its express approval rights violates the implied covenant of good faith and fair dealing. Neither theory comes close to establishing the likelihood of success required.

At most, both present substantial, vigorously contested questions of law and fact that preclude any form of *ex parte* injunctive relief.

### A. Defendants' Labor Code § 2855 Claim is Meritless and Cannot Support "Emergency" Relief

Defendants advance as their primary theory the assertion that the parties' recording agreement became unenforceable in 2025 under California Labor Code § 2855. That theory is not merely disputed. It is untenable on this record. In pressing this argument, Defendants attempt to artificially collapse the parties' entire contractual history into a single uninterrupted agreement dating back to 2018. That characterization fundamentally misstates the undisputed facts. In December 2021, the parties executed an entirely new

SINGH,
SINGH &
TRAUBEN,
LLP

Exclusive Recording and Participation Agreement, which was then materially amended in August 2022 in connection with a negotiated global distribution arrangement with Sony. Those agreements expressly terminated the prior 2018 framework, replaced the earlier economic structures, modified delivery obligations, integrated a new global distribution regime, reallocated advances and participation rights, and introduced new consideration along with material new contractual commitments. (<u>Alejandre Decl.</u> ¶¶ 2-10).

This was not a mere extension of the original agreement. It was instead a comprehensive restructuring of the parties' entire relationship, supported by new and independent consideration. Section 2855 does not prohibit sophisticated parties from terminating an existing agreement and entering a new one supported by new consideration, nor does it forbid them from renegotiating economic terms in the midst of an ongoing business dispute. Defendants' newfound attempt to recast the 2021 and 2022 agreements as nothing more than a disguised continuation of the 2018 contract is entirely without merit and, at minimum, raises a contested factual issue that requires full adjudication on the merits rather than any form of "emergency" injunctive relief. (<u>Alejandre Decl.</u> ¶¶ 2-10).[1]

---

[1] Notably, although Defendants had already filed three separate counterclaims in this action, along with multiple answers and affirmative defenses, they never once mentioned Labor Code § 2855 until the very moment they submitted this misguided *ex parte* application. FRC first asserted counterclaims on October 8, 2025, and all Defendants filed their answer to Rancho's original complaint on October 13, 2025. <u>See</u> Declaration of Michael A. Trauben ("**<u>Trauben Decl.</u>**") at ¶¶ 3-4; ECF 01 at 79-238, 240-247). FRC then filed a first amended counterclaim on that same date. (<u>Trauben Decl.</u> at ¶ 5; ECF 01 at 248-408). After Rancho filed its First Amended Complaint on December 5, 2025 [ECF 22], Defendants responded on January 16, 2026 with yet another answer and a further version of FRC's counterclaims. (<u>Trauben Decl.</u> at ¶¶ 8-10; ECF 25). None of those prior pleadings contained even a single reference to Labor Code § 2855. Only on March 2, 2026, the very day they filed this purported "emergency" application, did Defendants attempt for the first time, and without leave of Court, to manufacture a § 2855 claim in support of their request for extraordinary relief. (<u>Trauben Decl.</u> at ¶¶ 11-13; ECF 35). Those latest amendments, however, constitute impermissible violations of Federal Rule of Civil Procedure 15 and are therefore legal nullities. (<u>Trauben Decl.</u> at ¶¶ 14-16 at Exs. "A" – "C").

SINGH,
SINGH &
TRAUBEN,
LLP

7

OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
**CASE NO.: 2:25-CV-10059 HDV (AJRx)**

Defendants proceed as though § 2855 automatically nullified all contractual exclusivity and approval rights as of February 2025. That premise is incorrect. The statute limits the judicial enforcement of personal service contracts beyond seven years. It does not operate as a self-executing mechanism that rescinds or voids existing agreements by operation of law. Courts determine its applicability only after careful examination of the specific contractual framework and factual context. Here, the enforceability of Rancho's exclusivity and approval provisions is already a central disputed issue in this litigation. Nonetheless, Defendants are now attempting a bad faith leveraging of a manufactured "emergency" to try to obtain an adjudication of the entire controversy that is not on the merits, thereby depriving Rancho of due process. Defendants, however, cannot bootstrap their statutory claim into an emergency order that would suspend those rights before their validity has been fully adjudicated. Granting such relief would effectively decide the § 2855 question in Defendants' favor without discovery, evidentiary development, or full briefing on the merits. That approach is both procedurally improper and substantively unwarranted.

Defendants' repeated assertion that there was "no moment of freedom" between the 2018 and 2021 agreements is equally unavailing. That phrase appears nowhere in the statute and is not the governing legal test. California courts focus instead on whether the parties executed a genuine contractual restructuring supported by new consideration, not whether there was some theatrical interlude of marketplace negotiation. In this case, Defendants received substantial new economic benefits in 2021 and 2022, including integration into a global Sony distribution structure. To suggest that these agreements are legally void simply because they were executed in connection with the resolution of a business dispute is contrary to settled principles of contract law. Although the 2021 and 2022 agreements in fact constitute a novation and create a materially new contractual framework, the question whether they do so is, at minimum, a complex and fact-dependent issue that cannot be resolved on an emergency *ex parte* record in a matter of hours.

SINGH,
SINGH &
TRAUBEN,
LLP

Defendants' belated and sudden invocation of this issue as a subterfuge to disguise a baseless "emergency" *ex parte* application does not come close to satisfying the heightened showing required for mandatory injunctive relief.

### B.   Defendants' Implied Covenant Theory is a Transparent Attempt to Override Express Contractual Rights

Defendants' alternative theory fares no better. They contend that Rancho's refusal to approve featured appearances violates the implied covenant of good faith and fair dealing. California law is unequivocal on this point. The implied covenant cannot contradict or override express contractual rights. <u>See</u> *Carma Developers (Cal.), Inc.*, 2 Cal.4th at 374; *Guz*, 24 Cal.4th at 349-50. It does not impose obligations beyond those to which the parties actually agreed, nor does it convert discretionary approval rights into mandatory consent.

The operative agreements expressly grant Rancho approval and exclusivity rights with respect to third-party features and exploitations. (<u>Alejandre Decl.</u> ¶¶ 2-10). Those rights are not implied. They are written, negotiated, and integrated into the broader Sony global distribution framework. Defendants do not allege that Rancho acted dishonestly or fabricated a contractual basis for its decisions. Instead, they argue that Rancho's motive in preserving its position during active litigation renders the exercise of its express discretion bad faith. That is not the law.

Exercising bargained-for contractual rights while the scope of those very rights remains in active dispute before this Court is not bad faith. It is the prudent and legally appropriate preservation of disputed interests pending adjudication. Defendants' own exhibits confirm that Rancho stated it was withholding consent precisely in light of the ongoing litigation over exclusivity and approval. That explanation is rational, not arbitrary. To hold otherwise would mean that any party exercising a disputed contractual right during litigation could be enjoined for bad faith simply because the counterparty dislikes the timing. Such a rule would effectively nullify express contractual discretion in virtually every commercial dispute.

Defendants' argument ultimately seeks to transform Rancho's contractual discretion into an obligation to advance their preferred commercial opportunities. The implied covenant prevents a party from frustrating the contract's core benefits. It does not require one party to subordinate its express exclusivity rights to the counterparty's external marketing timelines or third-party demands. Nor does it impose a duty to approve every feature unless the refusing party can articulate a business reason the other side deems satisfactory. That is not the bargain the parties struck.

Even accepting Defendants' assertion that Rancho's refusal is motivated by litigation considerations, that motive does not convert lawful enforcement of contractual rights into bad faith. Parties routinely preserve their contractual positions during litigation to avoid waiver, estoppel, or prejudice. This is a legally recognized and responsible course of action. Defendants' position would require the Court to hold that a contracting party must suspend enforcement of disputed rights whenever the counterparty presents an allegedly time-sensitive opportunity. That would invert the fundamental principle that courts do not rewrite contracts under the guise of equity.

The practical effect of the relief Defendants seek would be to convert Rancho's express approval clause into a compelled-consent regime for the duration of this litigation. That is not enforcement of the implied covenant. It is judicial modification of the parties' negotiated allocation of risk and control. Courts are particularly reluctant to grant injunctive relief that alters the carefully balanced structure the parties themselves created, especially where that structure is intertwined with a global distribution arrangement and economic participation rights.

Because Defendants' implied covenant theory attempts to override express contractual provisions, penalize the preservation of disputed rights, and convert discretion into obligation, they cannot demonstrate any likelihood of success on this claim. At minimum, the theory raises vigorously contested issues of contract interpretation and

SINGH,
SINGH &
TRAUBEN,
LLP

1    commercial reasonableness that are wholly unsuitable for resolution through emergency *ex*

2    *parte* motion practice.

3    **IV.    DEFENDANTS CANNOT DEMONSTRATE IRREPARABLE HARM**

4           Irreparable harm is a critical prerequisite for preliminary injunctive relief. *Winter*,

5    555 U.S. at 22-23. A plaintiff must establish that irreparable injury is likely in the absence

6    of an injunction, not merely possible, and that the injury cannot be adequately remedied

7    through monetary damages. Purely economic loss, even if substantial, does not qualify.

8    Defendants' asserted harm falls squarely within this category of compensable economic

9    injury and therefore cannot support the extraordinary relief they seek.

10           Defendants contend that, absent immediate intervention, they will lose featured

11    appearances tied to the World Baseball Classic and the FIFA World Cup, along with

12    associated marketing exposure and brand momentum. Yet these alleged injuries are

13    fundamentally economic in nature. Recording royalties are readily calculable. Any

14    advances are fixed sums. Distribution revenue can be measured with precision. Marketing

15    value linked to cross-promotional efforts is subject to expert estimation and proof. Even

16    tour-related participation revenue remains quantifiable under the parties' agreements.

17    Courts have consistently held that lost business opportunities, even those involving

18    prominent global brands or high-profile events, are fully compensable through damages.

19    The mere fact that an opportunity carries cultural or promotional significance does not

20    transform it into irreparable harm.

21           Defendants offer no evidence that these collaborations are incapable of valuation.

22    They present no executed contract imposing non-recoverable reputational penalties, no

23    liquidated damages exposure, and no showing that monetary relief would be inadequate.

24    At most, they vaguely assert that the opportunities are important and time-sensitive. That

25    is categorically insufficient. *Winter*, 555 U.S. at 22 (party seeking preliminary injunction

26    must show more than the "possibility" of irreparable injury; he must demonstrate that

27    irreparable injury is "likely" in the absence of preliminary relief). Should Defendants

28

SINGH,
SINGH &
TRAUBEN,
LLP

OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
**CASE NO.: 2:25-CV-10059 HDV (AJRx)**

ultimately prevail on their contract or newfound statutory theories, they may recover any available damages for lost royalties, advances, or marketing-related revenues. The very availability of such a remedy is fatal to any claim of irreparable harm.

Defendants' additional assertions of "brand harm" and "loss of momentum" fare no better. Their declarations repeatedly invoke vague concepts such as career momentum, brand positioning, and cultural capital. These claims are highly speculative and conclusory. The artist at issue is an internationally recognized performer with an established global platform. The record contains no evidence that a single delayed collaboration will cause permanent diminution of market relevance, collapse of fan relationships, or exclusion from future opportunities with MLB, FIFA, or other partners. Courts routinely reject irreparable harm arguments grounded in generalized assertions of reputational damage absent concrete proof of imminent, non-compensable injury. Here, Defendants have made no such showing. Indeed, their own submissions acknowledge that the alleged harm is tied to specific release dates and promotional timing, not to any permanent exclusion from the marketplace. Speculation about diminished exposure does not satisfy the requirement of likely, irreparable injury.

Finally, the urgency Defendants now invoke is entirely self-created. Equitable relief is unavailable where the claimed emergency results from the movant's own strategic decisions. Defendants pursued the MLB and FIFA opportunities with full knowledge of the ongoing litigation over exclusivity and approval rights and with full awareness that Rancho's consent is required under the operative agreements and the integrated Sony distribution structure. They elected to proceed without securing that consent, then imposed artificial deadlines and sought to convert a contractual disagreement into a judicial "emergency". A party may not manufacture urgency by voluntarily advancing in the face of known contractual restrictions and then invoke that self-created time pressure as grounds for *ex parte* relief.

SINGH,
SINGH &
TRAUBEN,
LLP

12
OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO.: 2:25-CV-10059 HDV (AJRx)

Most tellingly, Defendants do not seek narrow relief tailored to a single recording. They demand an order restraining Rancho from exercising or enforcing **any rights or remedies under the agreements** with respect to the MLB and FIFA activities. That sweeping restraint reveals the true purpose of this application: not to prevent irreparable harm, but to shift leverage in the broader contractual dispute. Where the harm alleged is economic and the remedy sought would fundamentally alter negotiated contractual rights pending full adjudication, courts decline emergency relief.

Because Defendants cannot demonstrate any likelihood of irreparable harm, their application must be denied on that basis alone.

## V. ANY RELIEF, IF GRANTED AT ALL, MUST BE SECURED BY A SUBSTANTIAL BOND

Rancho respectfully submits that Defendants' "emergency" *ex parte* application should be denied in its entirety. The record demonstrates neither a likelihood of success on the merits nor any possibility of irreparable harm. Should the Court nevertheless be inclined to grant any form of temporary relief, Federal Rule of Civil Procedure 65(c) mandates that Defendants post security in an amount sufficient to cover the costs and damages that Rancho would sustain if it were later determined that the restraint was wrongful.

The bond requirement serves a vital protective function. It ensures that the restrained party is not left to bear the full economic consequences of an improvidently granted injunction. Here, Defendants seek an order that would suspend Rancho's contractual approval and exclusivity rights in connection with high-profile commercial releases tied to global sporting events. Those rights form an integral part of the negotiated economic structure of the parties' agreements, including the integrated Sony global distribution framework. The activities at issue carry substantial revenue implications, encompassing recording royalties, advances, distribution participation, marketing value, and cross-promotional opportunities. If Rancho is ultimately found to have been wrongfully restrained from exercising its bargained-for rights, the resulting harm would include lost

SINGH, SINGH & TRAUBEN, LLP

leverage under the distribution arrangement, potential dilution of exclusivity protections, interference with the contractual allocation of revenue streams, and litigation prejudice arising from compelled performance during the pendency of this action.

Courts routinely require meaningful bonds in commercial contract disputes where the requested relief alters established economic relationships pending final adjudication. Where, as here, the moving party describes the opportunities at issue as exceptionally valuable and time-sensitive, the bond must reflect that magnitude. Defendants have offered no valuation of the MLB or FIFA-related releases, nor any evidence that monetary damages would be inadequate. In the absence of such a showing, any bond must at minimum account for the projected gross revenue associated with the releases, Rancho's contractual participation percentage, the value of the suspended approval and exclusivity rights, and the litigation risk imposed by compelled mid-dispute performance.

Absent a substantial bond commensurate with the economic stakes, Rancho would bear all downside risk while Defendants retain every upside benefit. Such an outcome would defeat the protective purpose of Rule 65(c).

Because the Application fails on multiple independent grounds, it should be denied outright. Should the Court nevertheless grant any relief, Rancho respectfully requests that Defendants be required to post a bond in an amount that fully safeguards Rancho's contractual interests pending final resolution of this matter.

## VI.    CONCLUSION

Defendants ask this Court to do something extraordinary: to suspend and override express contractual rights, to compel affirmative consent, and to reorder the parties' negotiated relationship in the middle of active Federal Court litigation on only twenty-four hours' notice. That is not the purpose of a temporary restraining order. As this Court has expressly admonished, *ex parte* applications are solely for extraordinary relief and are rarely granted. See *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). The relief sought here is not prohibitory, rather, it is mandatory. It would not

preserve the status quo and, instead, would fundamentally alter it. It would require Rancho to relinquish disputed exclusivity and approval rights before this Court has adjudicated their enforceability. Such relief is disfavored and available only upon a clear showing of entitlement. Defendants cannot come close to making that showing.

Defendants' completely new and sudden invocation of Labor Code § 2855 depends on resolving complex questions of novation, contractual restructuring, and statutory application that cannot be decided on an *ex parte* record. Their implied covenant theory attempts to convert express contractual discretion into compelled consent whenever Defendants present a time-sensitive commercial opportunity. Neither theory establishes any likelihood of success, much less the clear entitlement required for mandatory injunctive relief.

Nor can Defendants demonstrate irreparable harm. The alleged injury consists entirely of potential lost recording revenue, promotional exposure, and related economic opportunities. These harms, even if substantial, are readily calculable and fully compensable through monetary damages. Defendants identify no permanent market exclusion, no irreversible reputational collapse, and no injury incapable of redress through damages. The asserted urgency arises solely from Defendants' own decision to pursue third-party opportunities while fully aware that exclusivity and approval rights remain actively disputed.

Granting this Application would effectively adjudicate the core contractual issues in Defendants' favor without discovery, evidentiary development, or full briefing. Denying it preserves the status quo, maintains the integrity of the parties' agreements pending resolution, and leaves Defendants free to pursue whatever monetary remedies they contend are appropriate.

Emergency relief is reserved for truly extraordinary circumstances. This application presents nothing more than a contract dispute dressed in the language of urgency. Because

Defendants have failed to satisfy the *Winter* factors and cannot meet the heightened standard required for mandatory injunctive relief, the Application must be denied.

For these reasons, Plaintiff/Counter-Defendant Rancho respectfully requests that the Court deny Defendants' *ex parte* Application for Temporary Restraining Order in its entirety.

**DATED**: March 3, 2026                    Respectfully Submitted,

                                            SINGH, SINGH & TRAUBEN, LLP
                                            MICHAEL A. TRAUBEN

                                            By: _____
                                                Michael A. Trauben

                                            ***Attorneys for Plaintiff/Counter-Defendant***
                                            RANCHO HUMILDE ENTERTAINMENT, LLC
                                            *and **Third-Party Defendant*** HUMBLE TALENT
                                            AGENCY, INC.

1    The undersigned, counsel of record for plaintiff/counter-defendant Rancho Humilde

2    Entertainment, LLC, certifies that this memorandum of points and authorities contains

3    4713 words, which complies with the word limit of L.R. 11-6.1.

4    **DATED**: March 3, 2026                    Respectfully Submitted,

5

6                                               **SINGH, SINGH & TRAUBEN, LLP**

7                                               **MICHAEL A. TRAUBEN**

8                                               By: _____

9                                                   Michael A. Trauben

10

11                                              ***Attorneys for Plaintiff/Counter-Defendant***

12                                              RANCHO HUMILDE ENTERTAINMENT, LLC
                                                *and **Third-Party Defendant*** HUMBLE TALENT

13                                              AGENCY, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SINGH,
SINGH &
TRAUBEN,
LLP

OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO.: 2:25-CV-10059 HDV (AJRx)