**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS** (SBN: 310209)
trichards@singhtraubenlaw.com
**MICHAEL A. TRAUBEN** (SBN: 277557)
mtrauben@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

***Attorneys for Plaintiff/Cross-Defendant***
RANCHO HUMILDE ENTERTAINMENT, LLC *and*
***Cross-Defendant*** HUMBLE TALENT AGENCY, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company,

Plaintiff,

v.

FUERZA REGIDA CORP., a California corporation, JESUS ORTIZ PAZ, an individual, SAMUEL JAIMEZ, an individual, KHRYSTIAN RAMOS, an individual, JOSE GARCIA, an individual, and DOES 1 through 10, inclusive,

Defendants.

Case No.: **2:25-cv-10059 HDV (AJRx)**

The Honorable Hernán D. Vera
Courtroom 5B

**PLAINTIFF RANCHO HUMILDE ENTERTAINMENT, LLC'S SECOND AMENDED COMPLAINT FOR:**

1. **BREACH OF CONTRACT;**
2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
3. **DECLARATORY RELIEF;** ***and***
4. **ACCOUNTING**

**DEMAND FOR TRIAL BY JURY**

ACTION REMOVED: October 20, 2025
TRIAL DATE: None Set

FUERZA REGIDA CORP., a California corporation, JESUS ORTIZ PAZ, an individual, SAMUEL JAIMEZ, an individual, KHRYSTIAN RAMOS, an individual, JOSE GARCIA, an individual, )

Cross-Complainants, )

v. )

RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company, CINQ MUSIC GROUP, LLC, a California limited liability company, HUMBLE TALENT AGENCY, LLC, a California limited liability company, )

Cross-Defendants. )

Plaintiff, RANCHO HUMILDE ENTERTAINMENT, LLC (“**Plaintiff**” or “**RHE**”), hereby sues defendants FUERZA REGIDA CORP. (“**FRC**”), JESUS ORTIZ PAZ (“**Paz**”), SAMUEL JAIMEZ (“**Jaimez**”), KHRYSTIAN RAMOS (“**Ramos**”), JOSE GARCIA (“**Garcia**”), and DOES 1 through 10, inclusive (collectively, “**Defendants**”), and in support thereof states as follows:

## INTRODUCTION

1. Plaintiff RHE entered into an exclusive partnership with Defendant FRC that fueled chart-topping releases and commercial success. That partnership was built on promises of loyalty, exclusivity, and accountability. Yet, in blatant disregard of their contractual commitments, Defendants engaged in unauthorized side performances for third parties and entered into unauthorized live performance and touring agreements in violation of manifestly clear exclusivity provisions, failing to account to Plaintiff, diverting royalties, withholding touring revenues, undermining RHE’s market position, and eroding the very rights the parties’ written agreements were designed to protect. This action seeks to hold

Defendants to their contractual obligations, to restore Plaintiff's bargained-for benefits, and to prevent further harm and damage to RHE's business and creative interests.

## THE PARTIES

2. Plaintiff RHE is, and at all relevant times was, a California limited liability company with its principal place of business in Los Angeles County, California.

3. Defendant FRC is, and at all relevant times was, a California corporation with its principal place of business in San Bernardino County, California. FRC furnishes the exclusive recording services of Defendants Paz, Jaimez, Ramos, and Garcia, collectively professionally known as "Fuerza Regida" (hereinafter, individually and collectively, "**Artist**").

4. Upon information and belief, Defendant Paz is an individual residing in San Bernardino County, California.

5. Upon information and belief, Defendant Jaimez is an individual residing in San Bernardino County, California.

6. Upon information and belief, Defendant Ramos is an individual residing in San Bernardino County, California.

7. Upon information and belief, Defendant Garcia is an individual residing in San Bernardino County, California.

8. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such Defendants.

///

///

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Defendants because they reside in this State and conduct substantial business activities related to the claims at issue here in this State.

## ALLEGATIONS COMMON TO ALL CLAIMS

10. This action arises from Defendants' repeated and material breaches of exclusive recording agreements entered into with Plaintiff RHE, including amendments thereto, which require FRC to provide exclusive recording services to Plaintiff RHE for distribution by Sony Music Entertainment US Latin LLC ("**Sony**"). Specifically, FRC has breached its obligations by rendering numerous unauthorized side artist performances ("**Features**" or "**Unauthorized Features**") for third parties without obtaining the requisite approvals from RHE and/or Sony, failing to direct income from such Features to Sony for accounting to RHE, otherwise violating the exclusivity provisions of the agreements, failing to account for and pay RHE its share of revenues from live touring activities, and entering into unauthorized third-party agreements for recorded live performances without RHE's consent. These breaches violate exclusive distribution rights granted to Sony under a global distribution agreement, pursuant to which the parties agreed to appoint Sony as the exclusive distributor of Artist's recordings.

11. On or about February 2, 2018, RHE (and its affiliate Lumbre Music) entered into an initial exclusive recording agreement with Artist (the "**2018 Agreement**") pursuant to which Artist agreed to provide exclusive recording services to RHE/Lumbre Music. A true and correct copy of the 2018 Agreement is attached hereto as **Exhibit "A"**.

12. Under the 2018 Agreement, Artist committed to deliver albums during an initial period and option periods, with all recordings to be exclusively owned and controlled by Plaintiff RHE. Pursuant to Paragraph 10 of the 2018 Agreement ("**Touring Activities**"), RHE was also entitled to 40% of Artist's Net Touring Income, defined as "all gross income, regardless of when received (including advances, guarantees, fees, settlements, and

judgment awards) earned or derived from Artist's Touring Activities during the Term" less only specific direct out-of-pocket costs actually paid such as sound/lights, transportation, and opening act fees, with "Touring Activities" meaning "all live concert appearances by Artist, whether part of a so-called "concert tour" or otherwise." In addition, Paragraph 10 of the 2018 Agreement made clear that payments were due to Plaintiff no later than 10 business days after the receipt by Artist of any such monies and that the payments to Plaintiff must be accompanied by detailed accountings, with full audit rights granted to RHE.

13. On or about December 30, 2021, Defendant FRC (furnishing Artist's services) and RHE entered into an exclusive recording and participation agreement (the "**2021 Agreement**"), which superseded prior agreements between the parties with respect to the subject matter of the 2021 Agreement. A true and correct copy of the 2021 Agreement is attached hereto as **Exhibit "B"**.

14. On or about January 1, 2022, RHE and FRC entered into a settlement and release agreement pursuant to which the parties resolved all prior disputes arising under the 2018 Recording Agreement and related songwriter agreement, formally terminated the prior agreements, and replaced them with the 2021 Agreement, expressly agreeing that FRC would thereafter furnish Artist's exclusive recording services to RHE under the 2021 Agreement (the "**2022 Settlement Agreement**"). The 2022 Settlement Agreement was a foundational reset of the parties' relationship. It assigned fifty percent (50%) ownership of the Existing Masters to FRC, assigned one hundred percent (100%) of the musical compositions to Jesus Ortiz Paz, and provided for the payment of a $1.8 million settlement sum to FRC. Critically, the 2022 Settlement Agreement confirmed and perfected the operative exclusive recording relationship under the 2021 Agreement, which superseded all prior agreements and remains in full force and effect today. A true and correct copy of the 2022 Settlement Agreement is attached hereto as **Exhibit "C"**.

15. As part of the 2021 Agreement, each of the Artist Defendants, Paz, Jaimez,

Ramos, and Garcia, executed an inducement letter pursuant to which the Artist Defendants expressly (1) endorsed and approved the 2021 Agreement, and (2) assumed, guaranteed, and agreed to perform and be bound by the 2021 Agreement, including all of the covenants and obligations of Defendant FRC (including, without limitation, (a) to provide their exclusive services as recording artists; (b) fulfilling the recording commitments; and (c) granting to Plaintiff the Tour Income Participation, as if each of the Artist Defendants had executed the 2021 Agreement.

16. As provided in Paragraph 2.01 of the 2021 Agreement, the 2021 Agreement requires Defendant FRC to cause Artist to "render Artist's exclusive services as a recording artist" for the purpose of making Masters and Commitment Videos for Plaintiff, with FRC required to cause those Masters and Commitment Videos to be produced and delivered to Plaintiff as set forth in the 2021 Agreement.

17. The 2021 Agreement further requires Defendant FRC to deliver at least two albums (the "**Delivery Commitment**") and grants Plaintiff RHE exclusive rights to Artist's recording services during the Term, which commenced on December 30, 2021, and continues until at least six months after the release of the Second Album (subject to options and extensions). Further underscoring the exclusivity obligations, the 2021 Agreement includes restrictions on side performances without RHE's involvement and defines "Joint Recording" as "any Master embodying Artist's performance together with the performance by another artist or artists."

18. Pursuant to Paragraph 10.01 of the 2021 Agreement, FRC must pay and must cause any and all applicable third parties to pay Plaintiff RHE an amount equal to twenty-six percent (26%) of FRC's "Net Tour Income" in connection with Artist's concert performances during the Term of the 2021 Agreement. "Net Tour Income" is defined in the 2021 Agreement to mean 100% of the amount of gross compensation paid to and received by Artist and/or FRC in connection with the concert performance(s) concerned, less certain identified "Tour Costs" paid or incurred by or on behalf of FRC and/or Artist

in connection with the tour.

19. On or about August 12, 2022, FRC and RHE entered into a first amendment to the 2021 Agreement (the "**2022 Amendment**"), which extended the Term to at least five (5) years and eight (8) months from December 30, 2021 (through at least August 2027), and increased the Delivery Commitment to six Studio Albums and one Live Product, with an "Exclusivity Period" prohibiting releases through third parties for at least six months post-Term. A true and correct copy of the 2022 Amendment is attached hereto as **Exhibit "D"**.

20. The 2022 Amendment was executed in connection with a global distribution agreement dated August 10, 2022 between Plaintiff RHE, Defendant FRC, and Sony (the "**Sony Distribution Agreement**"), which appointed Sony as the exclusive global distributor of the Recordings. The provisions of the Sony Distribution Agreement are incorporated into the 2021 Agreement (as amended) by reference. Neither the 2022 Amendment nor the Sony Distribution Agreement modified the touring revenue share provisions from the 2018 Agreement. As reflected within the 2022 Amendment, the Sony Distribution Agreement's Section 4.12 regarding "Features" was ratified, which includes terms on consultations, income direction, and approvals for side artist performances.

21. Pursuant to Paragraph 1.03 of the 2021 Agreement (as added by the 2022 Amendment incorporating terms from the Sony Distribution Agreement), FRC's recording services in furnishing the exclusive recording services of Artist are exclusive to RHE for distribution by Sony. Specifically:

a. FRC must provide RHE/Sony with a reasonable amount of time to consult regarding the timing of any third-party release that includes a Feature;

b. Any income derived from Features (*e.g.*, royalties, advances, fees, or other compensation, excluding publishing income) must be paid to Sony and accounted to RHE pursuant to the agreements;

c. Any market-share granted in respect of Features must be directed to Sony;

d. Sony's legal and business affairs department must handle the side artist agreements for Features; *and*

e. Artist may not grant gratis Features unless they comply with specific provisions in Paragraph 4.12(e) of the Sony Distribution Agreement (*e.g.*, no more than a limited number per year and subject to approval).

(collectively, the 2021 Agreement, 2022 Amendment, and Sony Distribution Agreement are referred to herein as the "**Agreements**"). These provisions, as incorporated via the 2022 Amendment, further ensure exclusivity of Artist's recording services and prevent unauthorized side performances.

22. The 2021 Agreement and 2022 Amendment were new, standalone agreements supported by new and independent consideration, including substantial advances, marketing support, facilitation of the Sony Distribution Agreement, and material changes to ownership and delivery obligations. Defendants voluntarily entered into the 2021 Agreement and 2022 Amendment with the benefit of counsel and for substantial new consideration, thereby creating a distinct and independent contractual relationship rather than a continuous extension of the 2018 Agreement.

23. In addition, pursuant to the 2022 Amendment, Paragraph 10.02(a) of the 2021 Agreement was modified to provide that Defendants must pay and cause all applicable third parties to pay Plaintiff RHE 26% of FRC's "Net Tour Income" in connection with Artist's concert performances through December 31, 2023 and must pay and cause all applicable third parties to pay Plaintiff RHE 23% of FRC's "Net Tour Income" in connection with Artist's concert performances from January 1, 2024 through December 31, 2024 ("**Tour Participation**").

24. In consideration of the Agreements, RHE provided substantial value to Defendants, including advances, marketing, promotion, and facilitation of the Sony Distribution Agreement. Pursuant to a letter of direction dated August 12, 2022 from RHE

to Sony, Plaintiff directed Sony to pay Defendant FRC $4.68M, $3.12M, and $1.6M advances, plus 70–80% of royalties for the First Studio Album and 80% for subsequent Albums. However, these payments were conditioned upon FRC complying with its obligations under the Agreements.

25. Despite these clear obligations, Defendants have willfully and systematically breached the Agreements by rendering an extensive number of Unauthorized Features for third parties without any prior consultation or approval from RHE or Sony, without routing income through Sony, and without a proper accounting to RHE. These material breaches include, but are not limited to, failing to obtain consultations on timing, failing to direct income and market-share to Sony, and failing to involve Sony in negotiating side artist agreements. These Unauthorized Features also violate the Exclusivity Period under the Sony Distribution Agreement, during which Artist is prohibited from releasing recordings through third parties.

26. Examples of Unauthorized Features Defendants have rendered without Plaintiff's approval and without properly compensating Plaintiff in accordance with the Agreements include, but are not limited to, the following non-exhaustive unauthorized collaborations:

| **Song Title** | **Collaborating Artist** | **Released by** |
|---|---|---|
| PURA SOMBRERIZA | TOMAS BALLARDO | OCHOA RECORDS |
| TRAVIESA | ANGEL TUMBADO JORSSHH | STREET MOB / CINQ |
| COSAS CAMBIARON | CALLE 24 | STREET MOB / CINQ |
| LA VIDA DEL LEON | GRUPO MAXIMO GRADO | WARNER MUSIC MEXICO |
| NENE | GORDO | ULTRA RECORDS LLC |
| MODO CAPONE | CHINO PACAS / DRAKE | PFL / STREET MOB / GEFFEN RECORDS |
| DIJERON QUE NO LA IBA LOGRAR | CHINO PACAS | PFL / STREET MOB / GEFFEN RECORDS |
| LA PERRIE | ESLABON ARMADO | DEL RECORDS |

| | | |
|---|---|---|
| SI CHINGARME A NADIE | CHUY MONTANA | STREET MOB RECORDS |
| FAMA | CHUY MONTANA / GUEROX | STREET MOB RECORDS |
| SONRISA COLGATE | GABITO BALLESTEROS | LOS CT RECORDS / INTERSCOPE |
| COMO CAPO | CLAVE ESPECIAL | STREET MOB RECORDS / WARNER LATINA |
| COMO ESTRELLA | CALLE 24 | STREET MOB RECORDS / WARNER LATINA |
| ULTIMAMENTE | CALLE 24 / CHINO PACAS | STREET MOB RECORDS / WARNER LATINA |
| SRT | XAVI | INTERSCOPE |
| PIKA PIKA | CHUYIN / JORSSH /CALLE 24 | STREET MOB / CINQ |
| ROSONES | JORSSHH | STREET MOB / CINQ |
| SMITH | CHINO PACAS / JUNIOR H | PFL / STREET MOB / GEFFEN RECORDS |
| NO PASA NADA | CLAVE ESPECIAL | STREET MOB RECORDS / WARNER LATINA |
| ME ACOSTUMBRE A LOS BUENO II | CHUYIN | STREET MOB RECORDS |
| MONEY EDITION | EDEN MUÑOZ | SONY MUSIC ENT. MEXICO |
| TORETTO | EL ALFA / DONATY | EL JEFE RECORDS |
| TACATA (REMIX) | TIAGZ / EL ALFA | STREET MOB / INTERSCOPE |
| QUE ONDA | CALLE 24 / CHINO PACAS | STREET MOB / CINQ |
| SANTO PATRON | BANDA MS DE SERGIO LIZARRAGA | LIZOS MUSIC |
| DE LUNES A VIERNES | ANGEL URETA / CALLE 24 | STREET MOB / CINQ |
| AHORA PIDEN PAROS | LOS GEMELOS DE SINALOA / CALLE 24 | STREET MOB / CINQ |

27. On or about April 3, 2025, RHE, through counsel, sent FRC a written notice of breach (the "**Breach Notice**"), demanding that FRC immediately cease rendering Unauthorized Features, comply with the Agreements, and provide information regarding the Unauthorized Features (including income derived therefrom). Nonetheless, FRC has failed and continues to fail and refuse to cure these breaches or respond adequately to the

Breach Notice.

28. As a direct and proximate result of FRC's breaches, RHE has suffered and continues to suffer substantial damages, including, but not limited to, lost royalties, advances, fees, market-share, and other compensation that should have been directed to Sony and accounted to RHE; lost shares of touring revenues; lost income from unauthorized deals; damage to RHE's exclusive rights and business relationships; and costs incurred in enforcing the Agreements. The exact amount of damages is subject to proof at trial, including lost shares from the Delivery Commitment of six Albums and one Live Product.

29. Moreover, FRC's continuing and willful disregard of its exclusivity obligations has caused, and continues to threaten, irreparable harm to RHE by eroding the core value of Artist's exclusive recording services and impairing the exclusive global distribution rights granted to Sony under the Agreements.

30. In addition, despite being fully aware of the parties' ongoing dispute regarding approval rights, Defendants knowingly pursued third-party opportunities without obtaining the required approvals and now attempt to use those same opportunities to manufacture claims of interference.

31. All conditions precedent to RHE's right to enforce the Agreements have been performed, waived, or excused.

**COUNT I**
**BREACH OF CONTRACT**
**(*Against All Defendants*)**

32. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

33. The Agreements constitute valid, binding, and enforceable contracts between RHE and FRC.

34. RHE has performed all obligations required of it under the Agreements, or performance has been excused or waived.

35. FRC has materially breached the Agreements by, among other things: (a) rendering Unauthorized Features without approval; (b) failing to consult with RHE/Sony on timing of third-party releases; (c) failing to direct income from Features to Sony for accounting to RHE; (d) failing to direct market-share to Sony; (e) failing to involve Sony in negotiating side artist agreements; and (f) granting potentially unauthorized gratis Features.

36. As a direct and proximate result of Defendants' material breaches of the Agreements, Plaintiff RHE has been damaged in an amount to be proven at trial, plus interest, attorneys' fees, and costs pursuant to the Agreements and California Civil Code § 1717.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(*Against All Defendants*)**

37. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

38. The Agreements contain an implied covenant of good faith and fair dealing, requiring the parties to perform in a manner that does not frustrate the purpose of the Agreements or deprive the other party of the benefits thereof.

39. FRC has breached this implied covenant by unfairly interfering with RHE's right to receive the benefits of the Agreements, including by secretly rendering Unauthorized Features, concealing income therefrom, failing to account for and pay touring revenue shares, entering into unauthorized deals, and undermining the exclusivity provisions, all in bad faith to deprive RHE of royalties, market-share, touring income, and control over Artist's services.

40. This bad faith conduct frustrates the purpose of the Agreements, including the exclusive recording services and touring share provisions.

41. As a direct and proximate result, RHE has been damaged in an amount to be proven at trial, plus interest, attorneys' fees, and costs.

**COUNT III**
**DECLARATORY RELIEF**
**(*Against All Defendants*)**

42. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

43. An actual controversy exists between the parties regarding their respective rights and obligations under the Agreements. Specifically, the parties dispute (a) whether FRC's repeated and ongoing unauthorized Features constitute material breaches; (b) whether FRC must immediately cease all further unauthorized side performances and related activities; (c) whether all income from past and future Features must be directed to Sony and accounted to RHE; (d) whether RHE is entitled to twenty-six percent (26%) of Defendants' Net Tour Income generated in connection with Artist's concert performances through December 31, 2023, and twenty-three percent (23%) of Defendants' Net Tour Income generated in connection with Artist's concert performances from January 1, 2024 through December 31, 2024; and (e) whether, by reason of FRC's material breaches and repudiation of its exclusivity obligations, the Term of the Agreements has been tolled.

44. Under Paragraph 2.01 of the 2021 Agreement (as extended and modified by the 2022 Amendment), the Term commenced on December 30, 2021, and was extended to at least five (5) years and eight (8) months thereafter, i.e., through at least August 2027, with a Delivery Commitment of six Studio Albums and one Live Product. The 2022 Amendment further imposed a post-Term Exclusivity Period prohibiting releases through third parties for at least six months after the end of the Term. These provisions were central to the bargain struck by the parties. In exchange for RHE's substantial advances, marketing support, and facilitation of the Sony Distribution Agreement, FRC promised exclusive recording services and full performance of the Delivery Commitment during the entire extended Term.

45. Under California law, no party may benefit from its own wrongdoing (Civ. Code § 3517). Courts are empowered to toll contractual terms when one party's ongoing

breaches prevent the other from receiving the full bargained-for benefit. FRC's systematic and continuing material breaches, including the dozens of Unauthorized Features detailed above, its repeated failure to consult with RHE and Sony on timing, its diversion of income and market-share, and its refusal to cure after receipt of the April 3, 2025 Breach Notice, have directly prevented fulfillment of the Delivery Commitment and have frustrated the core purpose of the extended Term and post-Term Exclusivity Period. Under Paragraph 2.01 of the 2021 Agreement (as extended by the 2022 Amendment), the Term was expressly lengthened to at least five years and eight months from December 30, 2021 (through at least August 2027), in exchange for RHE's substantial advances, marketing support, and facilitation of the Sony Distribution Agreement. Because FRC's own willful misconduct is the sole reason the Term has not yet run its full bargained-for course, principles of equity and fundamental fairness require that the Term be tolled from the date such breaches commenced, or at minimum for the pendency of this action. Defendants may not invoke any purported expiration, lapse of time, or running of the contractual Term that results directly from their ongoing breaches and repudiation of exclusivity. Defendants cannot benefit from the passage of time that resulted directly from their own ongoing breaches and repudiation of exclusivity obligations.

46. RHE therefore seeks a judicial declaration that: (a) Defendants have materially breached the Agreements, including with respect to exclusivity, touring revenue shares, and accounting obligations; (b) Defendants must immediately cease rendering any further Unauthorized Features or related activities; (c) all income from past and future Features must be directed to Sony and accounted to RHE; (d) RHE is entitled to 26% of Defendants' Net Touring Income generated in connection with Artist's concert performances through December 31, 2023, and 23% of Defendants' Net Touring Income generated in connection with Artist's concert performances from January 1, 2024 through December 31, 2024; (e) the Agreements remain in full force and effect, with FRC obligated to perform exclusively thereunder; and (f) the Term of the Agreements, and Defendants'

obligations thereunder, were tolled from the date Defendants commenced their material breaches, or, in the alternative, at minimum tolled since and during the pendency of this action, such that Defendants may not rely upon any purported expiration, lapse of time, or running of the contractual Term resulting from their own misconduct and ongoing breaches.

47. Such declaratory relief is necessary and appropriate to resolve the controversy and prevent further harm.

**COUNT IV**
**ACCOUNTING**
**(*Against All Defendants)***

48. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

49. Under the Agreements, FRC owes RHE a duty to account for all income derived from Artist's services, including Features and touring revenues. The amount owed is complex and within FRC's exclusive knowledge, necessitating a full accounting.

50. RHE demands a full accounting of all income, royalties, advances, fees, and other compensation received by FRC from Unauthorized Features since December 30, 2021, from all touring activities since February 2, 2018 (including details of Gross Touring Income, allowable deductions, and Net Touring Income), and from unauthorized deals.

51. Such accounting is necessary to determine the full extent of damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, in light of the foregoing, Plaintiff RANCHO HUMILDE ENTERTAINMENT, LLC respectfully requests that this Court enter a final judgment in its favor and as against Defendants FUERZA REGIDA CORP., JESUS ORTIZ PAZ, SAMUEL JAIMEZ, KHRYSTIAN RAMOS, and JOSE GARCIA, jointly and severally, as follows:

a. For compensatory damages, including restitution and disgorgement of profits derived from any Unauthorized Features, and unpaid touring shares, in an amount to be proven at trial;

b. For a declaration that (i) Defendants have breached the Agreements, including with respect to exclusivity and touring obligations; (ii) Defendants must immediately cease all unauthorized side performances and related activities; (iii) all income from past and future Features must be directed to Sony and accounted to Plaintiff; (iv) Plaintiff is entitled to 26% of Defendants' Net Touring Income through December 31, 2023, and 23% from January 1, 2024, through December 31, 2024; (v) the Agreements remain in full force and effect, with Defendants obligated to perform exclusively thereunder; (vi) the Term of the Agreements, and Defendants' obligations thereunder, were tolled from the date Defendants commenced their material breaches of the Agreements, or, in the alternative, at minimum tolled since and during the pendency of this action, such that Defendants may not rely upon any purported expiration, lapse of time, or running of the contractual Term resulting from their own misconduct and ongoing breach; and (vii) for such further declaratory relief as the Court deems just and proper;

c. For an order requiring Defendants to provide a full and complete accounting of all income, royalties, advances, fees, and other compensation received by FRC from Unauthorized Features since December 30, 2021, from all touring activities since February 2, 2018 (including details of Gross Touring Income, allowable deductions, and Net Touring Income), and from unauthorized deals;

d. For pre- and post-judgment interest at the maximum legal rate;

e. For attorneys' fees and costs pursuant to the Agreements and California Civil Code § 1717; *and*

f. For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues in this action so triable.

**DATED**: April 3, 2026

Respectfully Submitted,

**SINGH, SINGH & TRAUBEN, LLP**
**MICHAEL A. TRAUBEN**

By: */s/ Michael A. Trauben*
Michael A. Trauben

***Attorneys for Plaintiff/Cross-Defendant***
RANCHO HUMILDE ENTERTAINMENT, LLC
*and* ***Cross-Defendant*** HUMBLE TALENT AGENCY, INC.