Kenneth D. Freundlich (SBN 119806)
Jonah A. Grossbardt (SBN 283584)
Hugh H. Rosenberg (SBN 360544)
**FREUNDLICH LAW, APC**
Ken@Freundlichlaw.com
Jonah@Freundlichlaw.com
Hugh@Freundlichlaw.com
16133 Ventura Blvd., Suite 645
Encino, CA 91436
Telephone: 818-377-3790
Facsimile: 310-275-5353

Walter Mosley, Esq. (SBN 244169)
wm@waltermosleyesq.com
WALTER MOSLEY LAW
601 S. Figueroa St., Ste. #4400
Los Angeles, California 90017
Telephone: (213) 232 - 3886

*Attorneys for Defendants and Counterclaimants FUERZA REGIDA CORP., JESUS ORTIZ PAZ, SAMUEL JAIMEZ, KHRYSTIAN RAMOS and JOSE GARCIA*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company,<br><br>        Plaintiff,<br><br>        vs.<br><br>FUERZA REGIDA CORP., a California corporation, JESUS ORTIZ PAZ, an individual, SAMUEL JAIMEZ, an individual, KHRYSTIAN | Case No.: **2:25-cv-10059 HDV (AJRx)**<br><br>The Honorable Hernán D. Vera Courtroom 5B<br><br>**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND FUERZA REGIDA CORP.'S RESTATED AMENDED COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED** |

1

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND FUERZA REGIDA CORP.'S RESTATED AMENDED COUNTERCLAIMS**

RAMOS, an individual, JOSE GARCIA, an individual, and DOES 1 through 10, inclusive,

Defendants,

FUERZA REGIDA CORP., a California corporation, JESUS ORTIZ PAZ, an individual, SAMUEL JAIMEZ, an individual, KHRYSTIAN RAMOS, an individual, JOSE GARCIA, an individual,

Counterclaimants,

RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company, CINQ MUSIC GROUP, LLC, a California limited liability company, and HUMBLE TALENT AGENCY, LLC, a California limited liability company,

Counterclaim Defendants.

## <u>ANSWER</u>

Defendants Fuerza Regida Corp. ("FRC"), Jesus Ortiz Paz ("Paz"), Samuel Jaimez ("Jaimez"), Khrystian Ramos ("Ramos"), and Jose Garcia ("Garcia") (individually and collectively the "Answering Defendants"), answer and respond to Plaintiff Rancho Humilde Entertainment, LLC's ("RHE" or "Plaintiff") Second Amended Complaint as follows:

2

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

## INTRODUCTION

1.    Answering Paragraph 1, Answering Defendants admit that there was an agreement between RHE and FRC, admit that the action seeks what Plaintiff says it does, and otherwise deny the allegations in Paragraph 1.

## THE PARTIES

2.    Answering Defendants deny knowledge and information to form a belief as to the truth of these allegations, and on that basis deny the allegations of Paragraph 2.

3.    FRC admits the allegations contained in Paragraph 3.

4.    Paz admits the allegations contained in Paragraph 4.

5.    Jaimez admits the allegations contained in Paragraph 5.

6.    Ramos admits the allegations contained in Paragraph 6.

7.    Garcia admits the allegations contained in Paragraph 7.

8.    The allegations within Paragraph 8 are Doe allegations, which are improper in federal court and therefore no response is required. To the extent a response is required, Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of those allegations and on that basis deny those allegations.

## JURISDICTION AND VENUE

9.    The allegations of Paragraph 9 are conclusions of law to which no response is required. To the extent a response is required, Answering Defendants admit that the Court has personal jurisdiction over Answering Defendants but, Answering Defendants deny that Plaintiff is entitled to any of the requested relief.

## ALLEGATIONS COMMON TO ALL CLAIMS

10.    Answering Defendants deny the allegations contained in Paragraph 10.

11.    Answering Defendants admit the allegations contained in paragraph 11.

3

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

12. Answering paragraph 12, Answering Defendants refer the Court to Exhibit "A" for the complete recitation of the terms and conditions of Exhibit "A".

13. Answering Defendants admit the allegations contained in paragraph 13.

14. Answering Defendants admit that RHE and FRC entered into a settlement and release agreement which is attached as Exhibit "C" to the Second Amended Complaint, denies the remaining allegations in Paragraph 14, and refers the Court to Exhibit "C" for the complete recitation of the terms and conditions.

15. Answering paragraph 15, Answering Defendants refer the Court to Exhibit "B" for the complete recitation of the terms and conditions of Exhibit "B".

16. Answering paragraph 16, Answering Defendants refer the Court to Exhibit "B" for the complete recitation of the terms and conditions of Exhibit "B".

17. Answering paragraph 17, Answering Defendants refer the Court to Exhibit "B" for the complete recitation of the terms and conditions of Exhibit "B".

18. Answering paragraph 18, Answering Defendants refer the Court to Exhibit "B" for the complete recitation of the terms and conditions of Exhibit "B".

19. Answering paragraph 19, Answering Defendants refer the Court to Exhibit "C" for the complete recitation of the terms and conditions of Exhibit "C", admit the allegations contained in paragraph 19 and otherwise deny the allegations of paragraph 19.

20. Answering paragraph 20, Answering Defendants refer the Court to Exhibit "C" and to the Sony Distribution Agreement for the complete recitation of their terms.

21. Answering paragraph 21, Answering Defendants refer the Court to Exhibits "B" and "C" and to the Sony Distribution Agreement for the complete recitation of their terms.

4

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

22.    Answering paragraph 22, Answering Defendants deny the allegations contained in paragraph 22 and refer the Court to the Exhibits for the complete recitation of their terms.

23.    Answering paragraph 23, Answering Defendants refer the Court to Exhibit "C" for the complete recitation of its terms.

24.    Answering Defendants refer the Court to the August 12, 2022, letter of direction for its terms and otherwise deny the allegations in Paragraph 24.

25.    Answering Defendants deny the allegations in Paragraph 25.

26.    Answering Defendants admit that Artist recorded the songs listed in Paragraph 26. Answering Defendants deny the remaining allegations in Paragraph 26.

27.    Answering Defendants admit that the Breach Notice was sent and otherwise deny the allegations in Paragraph 27, including that FRC had any obligations to respond as RHE contends.

28.    Answering Defendants deny the allegations in Paragraph 28.

29.    Answering Defendants deny the allegations in Paragraph 29.

30.    Answering Defendants deny the allegations in Paragraph 30.

31.    Answering Defendants deny the allegations in Paragraph 31.

**COUNT I**

**<u>BREACH OF CONTRACT</u>**

(*Against All Defendants*)

32.    Answering Paragraph 32, Answering Defendants repeats the applicable responses contained above in Paragraphs 1 through 31.

33.    Answering Defendants refer the Court to the Agreements for their terms and otherwise deny the allegations in Paragraph 33.

34.    Answering Defendants deny the allegations in Paragraph 34.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

35. Answering Defendants deny the allegations in Paragraph 35.

36. Answering Defendants deny the allegations in Paragraph 36.

## COUNT II

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (*Against All Defendants*)

37. Answering Paragraph 37, Answering Defendants repeats the applicable responses contained above in Paragraphs 1 through 31.

38. Answering Defendants refer the Court to the Agreements for their terms and otherwise deny the allegations in Paragraph 38.

39. Answering Defendants deny the allegations in Paragraph 39.

40. Answering Defendants deny the allegations in Paragraph 40.

41. Answering Defendants deny the allegations in Paragraph 41.

## COUNT III

## DECLARATORY RELIEF

### (*Against All Defendants*)

42. Answering Paragraph 42, Answering Defendants repeat the applicable responses contained above in Paragraphs 1 through 31.

43. Answering Defendants admit that there is an actual controversy between RHE and FRC and otherwise deny the allegations in Paragraph 43.

44. Answering Defendants deny the allegations in paragraph 44 and refer the Court to the Exhibits for the complete recitation of their terms.

45. Answering Defendants admit the recitation of Civil Code 3517 but deny the remaining allegations of Paragraph 45.

46. Answering Defendants admit that RHE seeks a judicial declaration as detailed in Paragraph 46.

6

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

47.    Answering Defendants deny the allegations in Paragraph 47.

## COUNT IV

## ACCOUNTING

### (*Against All Defendants*)

48.    Answering Paragraph 48, Answering Defendants repeat the applicable responses contained above in Paragraphs 1 through 31.

49.    Answering Defendants deny the allegations in Paragraph 49.

50.    Answering Defendants admit that RHE demands a full accounting and otherwise deny the allegations in Paragraph 50.

51.    Answering Defendants deny the allegations in Paragraph 51.

## AMENDED AFFIRMATIVE DEFENSES

Answering Defendants have not completed their investigation of the facts of this case and their preparation for trial. The affirmative defenses stated herein are based on Answering Defendants' current knowledge, information and belief. Answering Defendants specifically reserve the right to modify, amend, or supplement any affirmative defense contained herein at any time. Without conceding that they bear the burden of proof or persuasion as to any of the causes of action set forth in the Second Amended Complaint, Answering Defendants allege the following separate amended affirmative defenses:

### First Affirmative Defense

(Failure to State a Claim)

1.    The Second Amended Complaint, and each and every purported cause of action alleged therein, fails to state a claim upon which relief can be granted.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

## Second Affirmative Defense

### (Statute of Limitations)

2.       Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations.

## Third Affirmative Defense

### (Unclean Hands)

3.       The Second Amended Complaint, and each purported cause of action alleged therein, is barred by Plaintiff's own conduct, actions, and inaction under the doctrine of unclean hands.

## Fourth Affirmative Defense

### (Labor Code Section 2855)

4.       Plaintiff's attempts to enforce the recording agreement at issue in this case are barred by the seven-year rule under California Labor Code Section 2855 because the agreement began in February 2, 2018 and Answering Defendants have not had any moment of freedom between its inception and the present moment.

## Fifth Affirmative Defense

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

5.       Plaintiff's claims to exclusivity are asserted in bad faith with no business and/or commercial purpose and therefore violate the implied covenant of good faith and fair dealing in the recording agreement at issue.

## Sixth Affirmative Defense

### (Estoppel)

6.       Plaintiff is legally estopped from obtaining the relief sought in the Second Amended Complaint.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

**Seventh Affirmative Defense**

(Waiver)

7.    Plaintiff by its own conduct, actions and inaction, has expressly, and/or impliedly, waived its right, if any, to recovery or relief against Answering Defendants as alleged in the Second Amended Complaint.

**Eighth Affirmative Defense**

(Failure to Mitigate Damages)

8.    Plaintiff failed to properly mitigate its alleged damages, if any, and therefore is precluded from recovering all or part of those alleged damages.

**Ninth Affirmative Defense**

(No Damages)

9.    Plaintiff has not suffered any damage as a result of any alleged action taken by Answering Defendants described in the Second Amended Complaint, and Plaintiff is thereby barred from asserting any claim against Answering Defendants and from obtaining any relief requested therein.

**Tenth Affirmative Defense**

(Good Faith)

10.    Answering Defendants acted reasonably and in good faith at all times material herein, based on all relevant facts, law, and circumstances known to them at the time that they so acted. Accordingly, Plaintiff is barred, in whole or in part, from any recovery or relief sought by the Second Amended Complaint.

**Eleventh Affirmative Defense**

(Consent, Authorization, Ratification, and/or Release)

11.    By its actions, Plaintiff consented to, authorized, ratified, and/or released either expressly or impliedly, Answering Defendants' acts of which Plaintiff

9

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

complains in the Second Amended Complaint, and each purported cause of action alleged therein.

### Twelfth Affirmative Defense

#### (Laches)

12.    The Second Amended Complaint, and each purported cause of action asserted therein, is barred by Plaintiff's own conduct, actions, and inactions under the doctrine of laches.

### Thirteenth Affirmative Defense

#### (Acquiescence)

13.    The Second Amended Complaint, and each purported cause of action asserted therein, is barred by Plaintiff's own conduct, actions, and inactions under the doctrine of acquiescence.

### Fourteenth Affirmative Defense

#### (Breach of Contract)

14.    The Second Amended Complaint, and each purported cause of action alleged therein, is barred by Plaintiff's own material breaches of the contract described in the Second Amended Complaint.

### Fifteenth Affirmative Defense

#### (No Proximate Cause/Intervening and Superseding Cause)

15.    No act or omission by Answering Defendants caused any damage, loss, or injury to Plaintiff and to the extent that Plaintiff suffered any damages (which Answering Defendants deny), such damages were not caused by Answering Defendants, but by the intervening and superseding acts or omission of one or more third parties.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

### Sixteenth Affirmative Defense

(Excuse)

16.    Answering Defendants' alleged actions and/or alleged failures to act were excused, in whole or in part, by acts and omissions of Plaintiff and/or third parties.

### Seventeenth Affirmative Defense

(Bad Faith)

17.    Plaintiff is barred from obtaining any relief from the purported causes of action contained in the Second Amended Complaint because Plaintiff brought the Second Amended Complaint in bad faith and for an improper purpose.

### Eighteenth Affirmative Defense

(Equitable Estoppel)

18.    Plaintiff is equitably estopped from obtaining any recovery sought in the Second Amended Complaint because of its words, actions, and conduct.

### Nineteenth Affirmative Defense

(Privilege)

19.    Answering Defendants were privileged to act in the manner they did under all circumstances thus barring any claim for relief by Plaintiff in the Second Amended Complaint.

### Twentieth Affirmative Defense

(Unjust Enrichment)

20.    Plaintiff's requested remedies in the Second Amended Complaint would result in its being unjustly enriched and are consequently barred.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

## Twenty-First Affirmative Defense

### (Setoff and Recoupment)

21.     To the extent Plaintiff proves any damages (which Answering Defendants deny), such damages are subject to setoff and recoupment for the substantially greater sums owed by Plaintiff to Answering Defendants arising from the same transactions and occurrences.

## Twenty-Second Affirmative Defense

### (Course of Dealing and Course of Performance)

22.     The parties established a course of dealing and course of performance. Plaintiff consented to and acquiesced in such arrangements and is estopped from now claiming such course of dealings were unauthorized.

## Twenty-Third Affirmative Defense

### (Failure of Conditions Precedent)

23.     Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to satisfy conditions precedent required to trigger any alleged obligations, including but not limited to obligations relating to approvals, accountings, payments, and third-party submissions.

## Twenty-Fourth Affirmative Defense

### (Reservation of Rights)

24. Answering Defendants have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available. Therefore, Answering Defendants reserve all rights to assert additional affirmative defenses at a later date.

12

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

## AMENDED COUNTERCLAIMS

Defendants and Counterclaimants Fuerza Regida Corp. ("FRC"), Jesus Ortiz Paz ("Paz"), Samuel Jaimez ("Jaimez"), Khrystian Ramos ("Ramos"), and Jose Garcia ("Garcia") (individually and collectively, the "FRC Counterclaimants") hereby allege their Amended Counterclaims against Plaintiffs and Counterclaim Defendants Rancho Humilde Entertainment, LLC ("Rancho"), Humble Talent Agency, LLC ("HTA") and Cinq Music Group, LLC ("Cinq") as follows:

## INTRODUCTION

1. These Counterclaims follows Counterclaim Defendant Rancho's desperate and transparently retaliatory lawsuit—a preemptive strike filed in bad faith just days after its counsel was advised of its own staggering and ongoing breaches of contract, fraud, and systematic financial malfeasance. Having been caught red-handed in a multi-year scheme to defraud its marquee artist, the four members of *Fuerza Regida* (individually and collectively the "Artists") out of millions, Rancho now seeks to weaponize the judicial system to deflect from its own pervasive misconduct.

2. The initial temerity of Rancho's actions is now exacerbated by the fact that FRC has now terminated the relevant agreements because they have expired by virtue of California's Labor Code Section 2855 which provides that a personal services contract cannot extend for more than seven years.

3. Nevertheless, Rancho continues to sabotage FRC and the Artists' opportunities by unlawfully asserting contractual rights pursuant to the now terminated agreement, including, but not limited to, sabotaging Paz's opportunity to have featured performances on Major League Baseball's soundtrack for their *World Baseball Classic* and FIFA's soundtrack for the *World Cup*.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

4.     Rancho's conduct not only violates California Labor Code Section 2855, but, in bad faith, seeks to hold FRC and the Artists in unlawful captivity beyond the legal time limit, deliberately blocking valuable commercial opportunities for the Artists and FRC  without any legitimate business purpose, but solely to gain advantage in anticipated and actual litigation. In doing so, Rancho sacrificed the Artists' career interests on the altar of its own legal strategy.

5.     Rancho's wrongdoing toward FRC also includes massive breaches of the relevant agreements and copyright infringement in (i) brazenly denying FRC the reversion of certain valuable master recordings that were supposed to automatically revert to FRC by operation of law, and (ii) materially breaching the parties' various contracts including, without limitation, systematically failing to make required royalty payments to FRC totaling in the millions of dollars. Rancho's desperate preemptive strike took the gloves off, weaponizing the judicial system for tactical advantage in disputes that, until this unconscionable filing, existed solely between the parties and were being resolved through good faith negotiations, outside the glare of public litigation.

6.     FRC brings this action to obtain a declaration of freedom from all personal services obligations to Rancho, compensation for the harm Rancho's unlawful and bad faith conduct has caused, and accountability for conduct that strikes at the heart of California's constitutional prohibition on involuntary servitude. Moreover, FRC brings these counterclaims seeking recompense for the extensive damages Rancho owes FRC under their agreements prior to their termination.

## THE PARTIES

7.     Counterclaimant FRC is, and at all times material hereto has been, a California corporation, duly organized and existing under the laws of the State of California that furnishes the exclusive services of the musical group professionally

14

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

known as "Fuerza Regida," comprised of Counterclaimants Paz, Jaimez, Ramos and Garcia.

8.    Counterclaimant Paz is, and at all times material hereto has been an individual residing in San Bernardino, California.

9.    Counterclaimant Jaimez is, and at all times material hereto has been an individual residing in San Bernardino, California.

10.    Counterclaimant Ramos is, and at all times material hereto has been an individual residing in San Bernardino, California.

11.    Counterclaimant Garcia is, and at all times material hereto has been an individual residing in San Bernardino, California.

12.    Counterclaimants are informed and believe and thereon allege that Counterclaim Defendant Rancho is, and at all times material hereto has been, a limited liability company duly organized and existing under the laws of the State of California with its principal place of business in Los Angeles County.

13.    Counterclaimants are informed and believe and thereon allege that Counterclaim Defendant CINQ is, and at all times material hereto has been, a California limited liability company engaged in music distribution services and is currently holding substantial revenues that contractually belong to FRC following automatic reversion of master recordings.

14.    Counterclaimants are informed and believe and thereon allege that Counterclaim Defendant HTA is, and at all times material hereto has been, a California corporation owned and controlled by Counterclaim Defendant Rancho.

15.    Counterclaimants are informed and believe and  thereon allege that at all material times each counterclaim defendant mentioned in this Counterclaim was the agent, employee, partner, joint venturer, co-conspirator, and/or employer of the other counterclaim defendant and was at all times herein mentioned acting within the

15

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture.

16. Counterclaimants are further informed and believe and thereon allege that the acts and conduct herein alleged of each counterclaim defendant were known to, authorized by, and/or ratified by the other counterclaim defendants, and each of them.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over Counterclaim Defendants because they initiated the claims to which these Counterclaims relate, have purposefully availed itself of the privilege of conducting business in California, has entered into contracts with California residents to be performed in California, has transacted business giving rise to these claims in California, has caused tortious injury in California, and initiated or consented to the pendency of this action in this Court.

18. Any contractual provision purporting to require litigation of these claims in a forum other than California or purporting to apply the law of any state other than California, is void and unenforceable as applied to the claims asserted herein because enforcement of such a clause as applied to the claims asserted herein would be unreasonable and those claims arise under California statutes embodying fundamental public policies of this State, including California Labor Code Section 2855, which cannot be waived or circumvented by contract. California has a materially greater interest in the resolution of these claims than any other state.

19. This Court has subject matter jurisdiction over FRC's copyright counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a), as it arises under the Copyright Act, 17 U.S.C. § 101 et seq. Specifically, the First Cause of Action asserts infringement of registered copyrights in sound recordings that have reverted to FRC

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

by operation of the Rancho Recording Agreement and applicable law. Pursuant to 28 U.S.C. § 1338(a), district courts have original and exclusive jurisdiction over civil actions arising under the Copyright Act.

20.    This Court has supplemental jurisdiction over FRC's state-law counterclaims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the copyright counterclaim as to form part of the same case or controversy under Article III of the United States Constitution. All of FRC's state-law counterclaims arise from the same contractual relationship, course of dealings, and set of commercial transactions that gave rise to the copyright counterclaim.

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to these counterclaims occurred in this District, all Counterclaim Defendants are subject to personal jurisdiction in this District, and the Rancho Recording Agreement was performed in substantial part in this District.

## FACTUAL BACKGROUND

### The Parties' Agreements And Rancho's Wrongful Acts

### Rancho's Breaches of the 2018 Recording Agreement

22.    By agreement dated February 2, 2018, Rancho and Lumbre Music signed Paz, Jaimez, Ramos and Garcia to an exclusive recording agreement (the "2018 Recording Agreement" attached as **Exhibit 1** hereto). That agreement provided for a three-year term and the delivery of seven albums within that time period. The 2018 Recording Agreement constituted a contract for the rendition of personal services within the meaning of California Labor Code Section 2855 which provides that the contract could not lawfully bind the Artist to render personal services for a period exceeding seven years from the date of its execution.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

Accordingly, the maximum enforceable term of the 2018 Recording Agreement expired no later than February 1, 2025.

23.     At the time of execution of the 2018 Recording Agreement, Paz, Jaimez, Ramos and Garcia were residents of the State of California, a fact which Rancho knew.

24.     During the term of the 2018 Recording Agreement, the Artists recorded 107 master recordings which were released through Rancho/Lumbre and their distributors (the "**Preexisting Masters**").

**2021 Dispute and Settlement**

25.     Disputes arose among the parties to the 2018 Recording Agreement. During the pendency of those disputes, the Artist remained bound by the 2018 Recording Agreement and was unable to render personal services for any other recording entity. Throughout this period the Artist had no contractual freedom and could not seek alternative commercial arrangements for their personal services as a recording artist.

26.     To resolve the disputes effective as of December 30, 2021 (the "2021 Transaction Date"), Rancho caused FRC, a company furnishing Artists' services, to enter into an Exclusive Recording and Participation Agreement. The individual Artists also each signed "Inducement Letters" binding them individually to the 2021 Extension Agreement (the "2021 Agreement" and the letters are attached as **Exhibit 2** hereto) for an additional period of six (6) months after the initial commercial release in the United States of the Second Album required to be delivered, with Rancho having options to further extend the term.

27.     Effective as of January 1, 2022, two days after the 2021 Transaction Date, Rancho and FRC entered into a Settlement and Release Agreement resolving their disputes and, among other things, causing the term of the 2018 Recording

18

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

Agreement to be formally terminated. (the "2022 Settlement Agreement" is attached as **Exhibit 3** hereto).

28.    The 2022 Settlement Agreement, *inter alia*, established that FRC owned fifty percent (50%) of all Preexisting Masters under the 2018 Recording Agreement, and expressly obligated Rancho to account for and pay FRC its proportionate share of all revenues generated from the exploitation of such Preexisting Masters from January 1, 2022, forward.

29.    Because of the sequencing of the 2021 Transaction with the termination of the 2018 Recording Agreement, the Artist was never free from a binding personal services obligation — not for a single day, not for a single hour — between the 2018 Recording Agreement and the 2021 Extension Agreement.  In fact, the Artist was simultaneously under two exclusive personal services obligations at the same time by the same label.

30.    At no point between the execution of the 2018 Recording Agreement and the execution of the 2021 Extension Agreement was Artist released from their existing contractual obligations, permitted to seek or negotiate alternative employment, or afforded any meaningful opportunity to exercise the freedom of contract that Labor Code § 2855 was enacted to preserve.

31.    Because Artist was continuously bound by the 2018 Recording Agreement at the time the 2021 Extension Agreement was executed, Plaintiff did not freely enter the 2021 Extension Agreement within the meaning of California law. The 2021 Extension Agreement was entered under the coercive shadow of the existing 2018 obligation, without any intervening period of liberty, and without the genuine freedom of contract that California law requires to restart the Section 2855 clock.

19

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

32.    The 2021 Extension Agreement and the termination of the 2018 Recording Agreement constitute a single unified transaction which does not create a new contractual relationship but instead ensured the continuous subjugation of the Artists' personal services to Rancho without interruption.  The transaction was designed, and its practical effect was, to prevent the seven-year clock under Section 2855 from ever commencing a new run, while simultaneously presenting the appearance of a new contractual relationship. This structure is precisely the kind of arrangement that California courts have refused to endorse as a valid restart of the Section 2855 period.

**2022 Further Extension**

33.    On August 12, 2022, Rancho further extended the term of their exclusivity period with FRC (and the Artists) to a date no sooner than April 2027. (the "August 2022 Extension" **Exhibit 4** hereto). Again, the Artists had no "moment of freedom" to negotiate at arms-length for its services with third parties. In addition, the August 2022 Extension prohibited FRC and the Artist from releasing any new material for an additional six months after the expiry of the term which means that the exclusivity could extend through 2027 for a grand total of **nine** consecutive unbroken years of expected service by FRC to Rancho.  The 2018 Recording Agreement, as extended by the 2021 Extension and the August 2022 Extension, is referred to herein as the "**Rancho Recording Agreement**."

34.    The 2018 Recording Agreement forms a single chain of personal service obligations running from 2018 to the present — approximately eight years of continuous service during which Artist was never free, never released, and never afforded the contractual liberty that § 2855 was enacted to guarantee.

**The Furnishing Company Structure and the Inducement Letter**

20

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

35.     The 2021 Agreement was nominally entered into by and through FRC as a furnishing Company, a corporate vehicle through which the Artist renders personal services.

36.     Notwithstanding the use of FRC, the personal services at issue are those of the Artist as individuals. FRC has no independent artistic capacity. The subject matter of the agreements is the Artist's individual human creative labor, not corporate activity.

37.     Rancho was fully aware that the substance of the contractual relationship was a personal services relationship with the Artist as an individual as evidenced when Rancho required each member of Artist to execute a personal letter of inducement directly binding each Artist as an individual.

**The Rancho Recording Agreement and Rancho's Wrongful Acts**

38.     In pertinent part, the Rancho Recording Agreement:

  a.  required FRC to deliver masters to comprise two albums to Rancho (Section 3 (a)(i));

  b.  provided reversion for Rancho to own the subject masters for a period of time after which all right title and interest in such masters would revert to FRC. In particular, Section 7.01(a) of the 2021 Rancho Agreement provides that (i) the so-called First Album Masters and the Excess Masters would "revert automatically and without notice or other trigger" to FRC on December 31, 2023, and (ii) the so-called Second Album Masters, which were released on December 30, 2022, would revert in like manner to FRC thirty months later on June 30, 2025;

  c.  while it is provided that these reversions are automatic, to effectuate said reversions, required the execution of certain assignments and

21

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

paperwork which the 2021 Rancho Agreement provides for in Section 7.02 of the 2021 Rancho Agreement;

    d.  required Rancho to account and pay to FRC certain advances and royalties earned in connection with the exploitation of the masters (Section 9);

    e.  permitted Rancho's affiliate to book live shows for Artist; and

    f.  required Artist to pay to Rancho (later including HTA) twenty six percent (26%) of Artist's live touring income.

39.    Between 2021 and August 2022, Rancho continued the exploitation of the Preexisting Masters, and through Defendant Cinq, also released (i) the **Cinq First Album Masters** which were released on an album titled *Del Barrio Hasta Aqui v. 2*: *Sangre Michoacana, Me Acostumbre A Lo Bueno, El WALKS, Gente Del Flaco, El Drogas, El Blontezon x Lenin Ramirez, Negocio Perro, Los Mire Con Talento [Version Estudio] x Luis R x Calle, Sangre De Colima x Grupo Diez Cuatro, 100k, Por El 5, Descansando, Mi Madre Se Acuerda, Que Esta Pasando x Calle, Lo Vieron Pasar* and *No Es Pa Presumir,* (ii) the **Cinq Excess Masters** which were *Que Esta pasando, Lo Vieron Pasar, Descansando* and *Los Mire Con Talento*.; and (iii) the **Cinq Second Album Masters**: No Le Aflojo, Senor Miedo, 1000 canciones (pa mis viejos), Chingas A Tu Madre and Billete Grande (the "Second Album Masters"). The Cinq First Album Masters, the Cinq Second Album Masters and the Cinq Excess Masters are individually and collectively the "Reverted Masters".

40.    FRC has registered the Reverted Masters with the copyright office, and a copy of the registration is attached as **Exhibit "5"** hereto.

41.    The Reverted Masters were released and distributed on Rancho's behalf, by Counterclaim Defendant Cinq, on information and belief, through a written agreement with Rancho.

22

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

42. Although not required to do so, FRC formally notified Rancho and Cinq of the reversions including most recently in correspondence dated August 2025, requesting their cooperation in transferring ownership of the Reverted Masters to FRC, to pay any income from these songs directly to FRC and to stop distributing the Reverted Masters.

43. Despite this clear contractual mandate for automatic reversion, Rancho and Cinq blocked FRC from obtaining the necessary assignments and rights to effectuate the contractual reversions and in fact they have continued to assert competing ownership claims without any legal basis, and Cinq, at the direction and coercion of Rancho, wrongfully withheld all revenues generated by the Reverted Masters from FRC post-reversion in an amount believed to exceed $1,500,000.

44. Rancho never paid the advances or royalties due on account of the Reverted Masters, from inception until the respective reversion dates, which are believed to exceed $2,000,000.

45. FRC has delivered all albums and recordings it was required to deliver under the Rancho Recording Agreement.

46. After its amendment in 2022, the Rancho Recording Agreement also required Rancho to contribute twenty percent (20%) of all royalties of artists whose performances are embodied on the Joint Recording, production costs, including Recording Budgets (Amendment Section 11), Video Budgets (Amendment Section 12), Marketing Budgets (Amendment Section 15), and Artwork costs (Amendment Section 13). Finally, Jimmy Humilde was named a "key man" for Rancho which means that if he were no longer participating in the day-to-day marketing and promotion of FRC product (Amendment 27), FRC would be substituted into the Global Distribution Agreement in place of Rancho.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

47. Throughout the years, there have been many collaborations between Artist and other artists.

48. Despite these clear and unambiguous obligations under the Settlement Agreement, Rancho has systematically failed to honor its accounting and payment duties, resulting in millions of dollars in unpaid revenues owed to FRC. Rancho has instead paid nothing and has refused to provide any further accounting statements, leaving FRC in the dark regarding the full scope of revenues generated and withheld which is believed to exceed millions of dollars.

**2022: The Sony Agreement**

49. On or about August 10, 2022, Rancho granted to Sony Music Entertainment US Latin LLC ("Sony Latin") exclusive distribution rights to FRC's (the Artist's) sound recordings (the "Global Distribution Agreement"). In connection with the assignment, Rancho and Sony Latin caused one member of Artist, Paz, to execute a letter of inducement directly binding Paz as an individual to Sony Latin. The Global Distribution Agreement provides for the distribution of five new albums worth of masters plus one live album, for a fixed term.

50. The inducement letter further confirms the personal services character of the contractual relationship and constitutes an independent acknowledgment by all parties that Plaintiff's individual human services are the subject matter of the agreements at issue.

51. The assignment of rights to Sony Latin does not affect either Rancho or Sony Latin's liability to Artist arising from Rancho and now Sony Latin's conduct in creating, maintaining, and exploiting the personal services relationship at issue, including Rancho and now Sony's liability under California Labor Code Section 2855.

**The Statutory Limit and Plaintiff's Notice**

24

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

52.    Seven years from the execution of the 2018 Recording Agreement elapsed on or about February 2, 2025.

53.    FRC and Artist contend that through emails in February 2026, with the filing of their Ex Parte Application concerning Section 2855, Rancho was on notice of Artists and FRC's election to terminate the personal services obligations under the Rancho Recording Agreement pursuant to California Labor Code Section 2855 (the "Section 2855 Notice").

54.    Out of an abundance of clarity and caution, on or about March 5, 2026, FRC and Artist provided written notice to Rancho and Sony Latin of FRC and Artists' election to terminate the personal services obligations pursuant to Section 2855.

55.    Rancho (and Sony) have responded to Artist's Section 2855 Notice not by acknowledging the expiration of their personal service obligations, but by continuing to assert those obligations as valid and enforceable in this and related disputes — precisely the harm that Section 2855 was enacted to prevent.

**The Withheld Feature Opportunities**

56.    Pursuant to the agreements between the parties, Rancho had the right to submit proposed side artist feature appearances by FRC for approval by Sony.

57.    This submission right existed for the commercial benefit of all parties, including FRC and the Artists, and imposed on Rancho an obligation — express or implied — to exercise that right in good faith and in a manner consistent with FRC or the Artists' commercial interests.

58.    During the relevant period, FRC communicated to Rancho concerning no fewer than two (2) specific, valuable proposals for Paz to appear as a featured artist on recordings for the MLB and FIFA (the "Feature Opportunities"). The Feature Opportunities represented significant commercial value to FRC and Paz,

25

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

including substantial feature fees, royalties, streaming revenue, and career advancement for FRC's artist Paz.

59. Rancho had every reason to submit the Feature Opportunities for Sony's approval. Sony has represented that it would have approved the Feature Opportunities had they been submitted.

60. Rancho deliberately chose not to submit the Feature Opportunities for Sony's approval. This deliberate withholding was not based on any legitimate business judgment, artistic consideration, or good faith assessment of FRC and Paz's interests.

61. Rancho withheld the Feature Opportunities solely to gain advantage in the disputes in the present litigation and sacrificed FRC and Paz's career opportunities as an instrument of its own legal strategy.

62. As a direct and proximate result of Rancho's withholding of the Feature Opportunities, FRC and Paz lost substantial income, career advancement, industry relationships, and commercial momentum that the Feature Opportunities would have provided.

**Rancho's Failure to Pay On Collaborations**

FRC's unpaid artist collaborations with third parties fall into three general categories:

**FRC Album Collaborations**

63. From time to time, on many of the Albums released under the Global Distribution Agreement, FRC engaged with third party collaborators who are generally owed 50% of the net profits of the revenues earned on the masters produced by such collaborations. The costs, including royalties and a variety of other expenses, are to be borne in an 80:20 ratio between Rancho and FRC.

26

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

64.    Pursuant to the Sony Agreement and certain letters of direction signed in conjunction therewith, Sony has accounted to Rancho and FRC for 20% and 80% of the net revenues respectively.

65.    Rancho has refused to pay its 20% share of the expenses of these collaborations and other expenses. Instead, FRC has been forced to pay the side artist royalties directly to Artist's collaborators to avoid career harm and embarrassment which has cost FRC in excess of millions of dollars to date.

### FRC collaborations on third party albums and masters

66.    Throughout the parties' relationship, FRC has also appeared as a "featured artist" collaborating on master recordings with other Rancho artists and non-Rancho artists. On information and belief, those recordings have been released by Sony and other labels, as applicable. Pursuant to the parties' agreement, Rancho is obligated to account for and pay Artist fifty percent (50%) of the net profits derived from each master recording.

67.    Rancho has failed to pay FRC royalties due on any of these collaborations with the most prominent one being FRC's appearance on the billion-stream track "Tu Boda" (a collaboration between Rancho artist Óscar Maydon & Artist), which has generated estimated revenues in the $7-10 million range. Despite repeated demands dating to October 2024, Rancho has failed to provide any executed agreement, accounting statements, or payments for this collaboration.

### Collaborations with FRC owned Artists

68.    From time to time, FRC has collaborated with artists who are signed to FRC's own label. Although Section 4.12 of the Global Distribution Agreement sets forth a detailed procedure governing Sony's participation in, and compensation from, featured artist arrangements, the parties have established a course of dealing with respect to features involving Artist's own label artists that operates outside that

27

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

procedure. Under this course of dealing, Artist provides Sony with notice of the featured artist use, Sony permits the use without receiving any share of the resulting revenues, and those revenues are paid to Artist and accounted for between Artist and Rancho pursuant to the Rancho Agreement.

69. FRC has exercised its contractual right of setoff by withholding payments otherwise due to Rancho for these collaborations to offset the millions of dollars owed by Rancho to FRC as set forth herein.

### Other Miscellaneous Collaborations

70. There are also a few collaborations that FRC has done with third parties that produced masters owned and controlled by third parties (not with FRC owned artists) with FRC features that have not been paid to FRC (including Pura Sombreriza, Nene, La Perrie, La Vida Del Leon, SRT, Money Edition, Toretto, Santo Patron).

71. FRC has not been paid for any of these collaborations.

72. FRC is informed and believes and thereon alleges that Rancho may have been paid the revenue shares due to FRC for these collaborations and if this is true, Rancho owes FRC its share (80%) of such receipts.

73. If FRC receives payments for these miscellaneous collaborations, FRC will account to and pay Rancho its 20% of the net revenue but will continue to retain any such Rancho share to offset Rancho's liabilities to FRC as alleged herein.

### Jimmy Humilde Retires from Industry

74. At the end of 2023, Mr. Humilde announced his retirement from the music industry, ceased performing his Key Man obligations under the Amended Rancho Agreement, and delegated these critical responsibilities to junior staff who lacked the requisite experience and industry relationships required under the Key Man provision. This abandonment constituted a "Key Man Default" under Section

28

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

21.07 of the Amended Rancho Agreement. Per the contract, this default immediately entitled FRC to "be deemed substituted in name, place, and stead of Company under the Sony distribution deal" and to "receive one hundred percent (100%) of the Sony Receipts for all Recordings or Albums commercially released thereafter".

75.    Rancho has refused to implement this provision and continues to unlawfully collect monies from Sony that contractually belong to FRC even though FRC is entitled to be substituted in as the named party in the Global Distribution Agreement.

**Rancho Nonpayment For 2022-2024 Personal Appearances**

76.    The Amended Rancho Agreement provided that all of FRC's personal appearances shall be booked on Artist's behalf by a licensed talent agency approved in writing by FRC. For live touring, FRC entered into a series of agreements with Rancho's affiliate HTA, and Live Nation Worldwide, Inc. ("Live Nation") (the "LN Agreement") pursuant to which HTA obtained the right to book shows for FRC furnishing the services of Artist.

77.    Rancho and/or HTA have systematically breached their payment obligations regarding personal appearances/tour income across multiple venues and time periods.

78.    In 2022, Rancho and/or HTA contracted with a Live Nation affiliate for VIP services and payments in connection with VIP experiences at Artist's live performances and kept all of the income for themselves.

79.    For the Mexico Tour in 2023, Rancho/HTA failed to provide any contracts, statements, or proper accounting for twenty-four (24) live performances, depriving FRC of revenue estimated to exceed $6 million.

80.    Similarly, for the 2022 and 2023 U.S. tours, Rancho/HTA systematically breached their accounting obligations by failing to provide mandatory

29

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

weekly settlements, denying FRC's representatives access to box office settlements, and instructing Live Nation to send all financial reports directly and exclusively to Rancho/HTA.

81.    Moreover, under agreements with Live Nation agreements dated July 6, 2023, and April 1, 2024, totaling over $36 million in guarantees plus additional reimbursements and bonuses, Rancho/HTA received all payments directly from Live Nation as the contractual lending company and systematically failed to pay FRC for twenty (20) shows.

82.    In at least one show (Bakersfield 2023), HTA physically altered a settlement statement provided to FRC, falsifying the payment amounts reflected therein, understating amounts due to FRC, and misappropriating for HTA's own benefit no less than $90,000 that was rightfully owed to FRC.

83.    FRC is also informed and believes that HTA entered into clandestine side arrangements with Live Nation, positioning itself as the purported "Head of Mexican music for Live Nation" and collecting undisclosed backend compensation, rebates, "promoter" fees and kickbacks, not only from FRC's performances but from all recording artists signed to Rancho.

84.    This systematic siphoning of revenues directly violated the express terms of Section 10.02(a) of the Amended Rancho Agreement, which required that one hundred percent (100%) of gross compensation be pooled as "Net Tour Income" with only specifically enumerated "Tour Costs" deducted before percentage splits to the parties. By secretly diverting substantial revenues through these undisclosed arrangements, Rancho/HTA circumvented the contractual revenue-sharing mechanism and defrauded FRC of its proportionate share of tour income across multiple performances and artists.

**Rancho's Unlawful Interference With FRC's Business**

30

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

85.    In addition to its fraudulent schemes and systematic contract breaches, Rancho and its principal Jimmy Humilde escalated to a malicious campaign of active sabotage designed to destroy FRC's professional relationships and career opportunities within the entertainment industry including without limitation:

a. **Apple Music Live Performance Interference:** In July 2025, a mere nine days before Artist's highly anticipated performance for Apple Music Live in Mexico City, Jimmy Humilde sent threatening and intimidating text messages to Juan Paz, the Global Head of Latin Music Business at Apple, falsely claiming the deal was conducted "behind my back" and threatening immediate legal action against Apple. Mr. Humilde had long written communications with both Sony and the FRC clearing the performance many months prior. This calculated bad-faith interference was designed to derail the event at the last possible moment and irreparably damage FRC's relationship with its key industry partner Apple. Rancho is still attempting to leverage this manufactured controversy to extort additional concessions from FRC regarding the delivery of the resulting live album;

b. **Latin Grammy Submission Sabotage:** FRC has learned that Rancho specifically requested that Sony remove Artist's submission for the 2024 Latin Grammy Awards, despite Artist being the top-selling Latin artist of 2023-2024. This unconscionable act of professional sabotage deprived Artist of the opportunity to compete in a newly created category specifically designed for its genre, causing irreparable harm to Artist's professional reputation and eliminating a historic opportunity for industry recognition that cannot be recovered or duplicated;

31

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

c. **Live Nation Sponsorship Interference:** Jimmy Humilde, on behalf of Rancho, personally contacted Live Nation executives and maliciously instructed them to retract a confirmed $50,000 sponsorship agreement for Artist's 2023 album release party. This tortious interference caused immediate financial damage and forced Artist to scramble for last-minute replacement sponsors, resulting in additional costs, logistical complications, and reputational harm within the industry; and

d. **2026 Bad Faith and Unfair Dealing:** As recently as March 2026, FRC secured the following lucrative engagements, each of which has been interfered with by Rancho's continued wrongful assertion of rights to FRC's personal services:

- FRC entered into a multi-faceted agreement with Major League Baseball ("MLB") encompassing: throwing out the first pitch at the USA-Mexico ballgame in the World Baseball Classic ("WBC"); a national tour of MLB stadiums with MLB promotional tie-ins; and the release of a recording where FRC is the "featured side artist" on a new recording by Reggaeton superstar "Tainy", which was to be released in conjunction with a WBC album on March 6, 2026. This agreement represents a significant commercial opportunity for FRC,  as it is a fusion of regional Mexican sounds with reggaeton and with Bad Bunny's historic Super Bowl performance activating the market for reggaeton.

- FRC has also been approached by FIFA in connection with the upcoming World Cup in the United States, to among other things, record a second song for a soundtrack. The FIFA

32

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

opportunity also includes opportunities for FRC to be marketed and cross-promoted with the World Cup in addition to making appearances and/or performances in the host stadiums.

- FRC has also been given the opportunity to record a track for inclusion on the next version of the lucrative Grand Theft Auto video game.

86.    Rancho has intentionally interfered with these business opportunities by refusing to let FRC have an exception to its "exclusivity" clause with FRC, even though California Labor Code Section 2855 prohibits any further enforcement of the 2018 Recording Agreement, and even though Rancho has admitted that the only purpose of this refusal is to shut down FRC's business opportunities solely because there is litigation and to force FRC into an unfair and premature settlement of this lawsuit.

## FIRST CAUSE OF ACTION

### (Copyright Infringement — Against Rancho and Cinq)

87.    FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

88.    FRC is the sole and exclusive owner of all rights, title, and interest, including the copyrights, in and to the Reverted Masters, such rights having reverted to FRC automatically: (i) as to the First Album Masters and Excess Masters, as of January 1, 2024, and (ii) as to the Second Album Masters, as of June 30, 2025, pursuant to Section 7.01(a) of the amended Rancho Agreement.

89.    The copyrights in the Reverted Masters have been registered with the United States Copyright Office.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

90.    FRC has the exclusive rights, among others, to reproduce, distribute, publicly perform and display the Reverted Masters as well as the right to authorize others to exercise those rights.

91.    Without authorization from FRC, and in direct violation of FRC's exclusive rights, Rancho and Cinq have continued to reproduce, distribute, and otherwise exploit the Reverted Masters after they reverted, thereby infringing on FRC's copyrights.

92.    Rancho's infringement was and continues to be willful, as it had actual knowledge of the automatic reversion provisions in the Rancho Agreement.

93.    As a direct and proximate result of Rancho's infringement, FRC has been damaged in an amount to be proven at trial. FRC is entitled to its actual damages and Rancho's profits attributable to the infringement.

94.    As a result of Rancho and Cinq's acts and conduct, FRC has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. FRC is informed and believes, and on that basis avers, that unless enjoined by this Court, Rancho and Cinq will continue to infringe FRC's rights in the Reverted Masters. FRC is entitled to permanent injunctive relief to restrain and enjoin Rancho and Cinq's continuing infringing conduct.

## SECOND CAUSE OF ACTION

### (Declaratory Relief — California Labor Code Section 2855)

### Against Defendant Rancho)

95.    Counterclaimants incorporate by reference all preceding paragraphs as though fully set forth herein.

96.    An actual and justiciable controversy has arisen and now exists between Counterclaimants and Rancho concerning their respective rights and duties under California Labor Code Section 2855 and the agreements described herein.

34

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

97.   Counterclaimants contend and seek a declaration that:

a.  The personal service obligations arising from the 2018 Agreement and all subsequent agreements, modifications, restructurings, and assignments relating thereto has been continuous and uninterrupted since February 2, 2018;

b.  Artists were never free from a binding personal services obligation between February 2, 2018 and the present, and accordingly no intervening agreement — reset the seven-year clock under Section 2855;

c.  The maximum enforceable term of Artist's personal services obligation expired no later than February 1, 2025, seven years from the execution of the 2018 Recording Agreement;

d.  All provisions of the 2018 Recording Agreement, and any related agreements purporting to obligate Artists to render personal services after February 1, 2025, are void and unenforceable pursuant to California Labor Code Section 2855;

e.  FRC and the Artists are not obligated to render any further personal services to Rancho, Sony, or any assignee or successor of Rancho's rights under the agreements at issue; and

f.  Rancho's continued assertion of rights to Artist's personal services beyond February 1, 2025 is unlawful.

98.   Rancho disputes FRC and Artist's contentions and contends the personal services obligations remain valid and enforceable.

99.   A judicial declaration is necessary and appropriate to resolve this controversy, to establish the parties' rights and obligations, and permit FRC and the

35

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

Artists to enter freely into commercial arrangements without the threat of litigation based on void contractual provisions.

### THIRD CAUSE OF ACTION

**(Damages for Unlawful Assertion of Personal Services Obligation Beyond Statutory Limit - Against Rancho)**

100.    Counterclaimants incorporate by reference all preceding paragraphs as though fully set forth herein.

101.    California Labor Code Section 2855 reflects a fundamental public policy of the State of California rooted in the constitutional prohibition on involuntary servitude. Counterclaim Defendant Rancho's unlawful assertion of continuing rights to Counterclaimants' personal services beyond the statutory limit constitutes a violation of that public policy and of Counterclaimants' statutory rights.

102.    Since February 2, 2025, Rancho has continued to assert rights to Counterclaimants' personal services and interfered with business opportunities in doing so, without legal basis. During this period of unlawful assertion, Counterclaimants have suffered lost income, lost commercial opportunities, and damage to their career that would not have occurred had Defendants acknowledged the Section 2855 limit. This constitutes compensable damages.

103.    As a direct and proximate result of Defendants' unlawful conduct, Counterclaimants have suffered damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

**(Breach of Contract — Against Rancho)**

104.    FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

105.    The Rancho Recording Agreement and Settlement Agreement are valid and enforceable contracts for past conduct and to the extent that they survive the

36

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

expiration of the term of the Rancho Recording Agreement under the seven-year rule California Labor Code Section 2855.

106.   FRC has performed all of its obligations under the Rancho Recording Agreement and the 2022 Settlement Agreement except to the extent prevented or excused by Rancho's unlawful activities.

107.   Rancho has materially breached these agreements by, among other things: (a) failing to submit the Feature Opportunities for Sony Latin's approval, thereby depriving FRC and Paz of the commercial benefits those opportunities represented, (b) failing to honor the automatic reversion of the Reverted Masters; (c) failing to execute necessary assignment documents; (d) failing to account for and pay millions due on the Preexisting Masters; (e) failing to account for and pay on all side artist features; (f) failing to account for and pay on all touring income including through its affiliate HTA; (g) engaging in fraudulent accounting and forgery; (h) breaching the Key Man clause; (i) failing to pay required recording advances and production costs; and (j) violating FRC's creative control rights. As a direct result of these breaches, FRC has suffered damages in an amount to be proven at trial but believed to be in excess of $25 million.

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty

### Against Rancho)

108.   Counterclaimants incorporate by reference all preceding paragraphs as though fully set forth herein.

109.   By virtue of the specific non-arm's length character of the relationship between Counterclaimants and Rancho — including Rancho's control over Counterclaimants' commercial opportunities and Counterclaimants' money, Rancho's superior access to information affecting Counterclaimants' career, Rancho's

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

exercise of discretionary powers over Counterclaimants' professional activities, and the trust and confidence Counterclaimants necessarily reposed in Rancho — Rancho owed Counterclaimants fiduciary duties (and/or quasi-fiduciary duties) including duties of loyalty, care, candor, and good faith. Specifically: (a) Rancho served as the sole conduit through which all revenues from FRC's recordings and live performances were collected, maintained, and disbursed, with FRC having no independent access to such revenues; (b) Rancho exercised exclusive discretionary authority to submit or withhold feature-appearance requests to Sony Latin on FRC's behalf, with no obligation to consult FRC; (c) Rancho, through its affiliate HTA, exercised exclusive authority to negotiate, execute, and account for all live touring agreements on FRC's behalf; (d) Rancho possessed superior information regarding the financial performance of FRC's masters that FRC could not independently verify; and (e) FRC was required to, and did, repose trust and confidence in Rancho's exercise of each of these discretionary powers. The relationship was not one of equals transacting at arm's length; it was a relationship in which Rancho held comprehensive discretionary control over every material commercial aspect of FRC's career and finances.

110.    Among the specific fiduciary obligations Rancho owed Counterclaimants was the duty to exercise the feature submission right in a manner consistent with Counterclaimants' commercial interests and not to sacrifice Counterclaimants' career opportunities for Rancho's own benefit.

111.    Rancho breached its fiduciary duties to Counterclaimants by, among other things:

    a.  Deliberately withholding the Feature Opportunities from submission for Sony Latin's approval, depriving FRC and Paz of substantial commercial opportunities;

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

  b. Using FRC and Paz' career opportunities as instruments of Rancho's own litigation strategy;

  c. Placing Rancho's litigation interests above FRC and Paz's career and financial interests;

  d. Defalcations related to the handling of FRC and the Artists' money and abject failure to account; and

  e. Continuing to assert rights to Counterclaimants' personal services beyond the § 2855 limit in order to maintain commercial and litigation leverage.

112. As a direct and proximate result of Rancho's breach of fiduciary duty, FRC and Paz and the other Artists have suffered damages including lost feature fees, lost royalties, lost streaming revenue, lost career advancement, lost commercial momentum, and other consequential damages in an amount to be proven at trial.

113. Rancho's conduct was willful, oppressive, malicious, and fraudulent within the meaning of California Civil Code § 3294. Rancho knowingly and deliberately sacrificed FRC and Artists' career interests for Rancho's own benefit and maintained Artists in unlawful personal services captivity beyond the statutory limit. Counterclaimants are therefore entitled to an award of punitive damages in an amount sufficient to punish Rancho and deter similar conduct.

**SIXTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing — Against Rancho)**

114. FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

115. Under California law, there is implied in the Rancho Recording Agreement a covenant of good faith and fair dealing in which each party agrees that

39

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

it will not in bad faith and without any valid reason, attempt to deprive the other party of the benefits of the agreement.

116. FRC reasonably expected to receive, among other benefits, the full commercial value of feature appearance opportunities that were within the scope of Rancho's submission rights under the agreements.

117. Rancho breached the implied covenant by:

    a. Deliberately withholding the Feature Opportunities for the improper purpose of gaining litigation advantage, thereby depriving FRC of the commercial benefits FRC reasonably expected;

    b. Using contractual mechanisms — specifically the feature submission right — as weapons rather than for their intended commercial purpose;

    c. Continuing to assert rights to Counterclaimants' personal services after the Section 2855 limit had expired, in bad faith and without reasonable basis; and

118. As a direct and proximate result of Rancho's breach of the implied covenant, FRC and Artists have suffered damages in an amount to be proven at trial but believed to exceed Ten Million Dollars ($10,000,000).

## SEVENTH CAUSE OF ACTION

### (Tortious Interference with Prospective Business Advantage — Against Rancho)

119. FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

120. FRC has a prospective and existing economic relationship with Apple, Live Nation, the Latin Recording Academy, Cinq, MLB, FIFA, and Rockstar Games, Inc. which were to result in economic benefit to FRC.

40

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

121. Rancho intentionally committed wrongful acts designed to disrupt FRC's valid business relationships and economic expectancies with third parties including without limitation MLB and FIFA.

122. Rancho engaged in this behavior even in light of the fact that its contractual agreements with FRC have terminated under Section 2855.

123. Rancho's interference was a substantial factor in causing harm to FRC, including lost revenue, reputational damage, and lost professional opportunities.

124. As a direct result, FRC has been damaged in an amount to be proven at trial but believed to exceed Three Million Dollars ($3,000,000).

125. Rancho's conduct was intentional, malicious and done for the purpose of causing injury to FRC, constituting despicable conduct that subjected FRC to cruel and unjust hardship in conscious disregard of FRC's rights, thereby justifying an award of exemplary and punitive damages in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION

**(Unfair Business Practices (Cal. Bus. & Prof. Code Section 17200) — Against Rancho)**

126. FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

127. Business and Professions Code, Section 17200 states in pertinent part: "…unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…"

128. Rancho's conduct as alleged herein constitutes unlawful, unfair, and fraudulent business acts and practices within the meaning of § 17200, including:

    a. Rancho's unlawful assertion of rights to FRC and Artists' personal services beyond the limit established by California Labor Code Section

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

2855 which is a per se violation of California law and therefore an unlawful business practice under § 17200; and

b. Defendant's unfair and deliberate withholding of the Feature Opportunities for the sole purpose of litigation advantage, at the expense of Counterclaimants' career and commercial interests, constitutes an unfair business practice that offends established public policy and causes harm to FRC and Artists that is disproportionate to any legitimate benefit to Rancho.

129. As a result of Rancho's unlawful, unfair, and fraudulent business practices, FRC and Artists have suffered injury in fact and lost money and property.

130. FRC is entitled to restitution of all amounts by which Rancho has been unjustly enriched through its unlawful conduct, and to injunctive relief prohibiting Rancho from continuing to engage in the unlawful, unfair, and fraudulent practices alleged herein.

**NINTH CAUSE OF ACTION**

**(Accounting — Against Rancho)**

131. FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

132. Rancho has been and continues to be engaged in the exploitation of master recordings featuring performances by the Artist for which accountings and royalty payments are contractually owed to FRC pursuant to the Rancho Recording Agreement.

133. Rancho has the sole and exclusive control over the books and records that establish the applicable amounts of revenue for royalties to FRC.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

134.    Based upon Rancho's exclusive control over the books and records, and pursuant to the terms of the Rancho Recording Agreement, Rancho has a duty to account to and pay FRC for all royalties due and owing.

135.    Rancho has utterly failed to account to and pay FRC for royalties earned from the exploitation of FRC's master recordings.

136.    More generally, an accounting is necessary and appropriate under the circumstances since the precise amount of money that is due to FRC is unknown to it and cannot be ascertained without an accounting.

137.    FRC demands a full and complete accounting of all monies due from all sources, including but not limited to the Preexisting Masters, side artist features, and all live touring activities.

## TENTH CAUSE OF ACTION

### (Accounting — Against HTA)

138.    FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

139.    HTA has been and is engaged in the active exploitation of live performance by Artist for which accountings and payments are owed to FRC.

140.    HTA has the sole and exclusive control over the books and records that establish the applicable amounts of revenue due to FRC.

141.    Based upon HTA's position of exclusive control over the books and records, HTA must account to and pay FRC for all royalties due.

142.    HTA has failed and refused to account to and pay FRC for revenues earned from the Artist's live performances.

143.    More generally, an accounting is necessary and appropriate under the circumstances since the precise amount of money that is due to FRC is unknown to it and cannot be ascertained without an accounting.

43

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

144.   FRC demands a full and complete accounting of all monies due from all sources for all live touring activities.

## ELEVENTH CAUSE OF ACTION

### (Constructive Trust against Rancho)

145.   FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

146.   Based on the foregoing allegations, Rancho has wrongfully retained and continues to retain royalties that belong to FRC, not Rancho.

147.   Accordingly, the imposition of a constructive trust is warranted over all such proceeds in Rancho's possession.

## TWELFTH CAUSE OF ACTION

### (Constructive Trust against HTA)

148.   FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

149.   Based on the foregoing allegations, HTA has wrongfully retained and continues to retain royalties that belong to FRC, not HTA.

150.   Accordingly, the imposition of a constructive trust is warranted over all such proceeds in HTA's possession.

## THIRTEENTH CAUSE OF ACTION

### (Unjust Enrichment against Rancho)

151.   FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

152.   Rancho has been and is engaged in the active exploitation of FRC's masters under the Rancho Recording Agreement.

153.   Rancho has collected monies from such exploitation without properly or adequately accounting to and paying what is owed to FRC.

44

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

154.   Rancho will be unjustly enriched if it is allowed to retain these monies without fairly and properly compensating FRC.

### FOURTEENTH CAUSE OF ACTION

### (Unjust Enrichment against HTA)

155.   FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

156.   HTA has been and is engaged in the active exploitation of Artist's live performances.

157.   HTA has collected monies from such exploitation without properly or adequately accounting to and paying what is owed to FRC.

158.   HTA will be unjustly enriched if it is allowed to retain these monies without fairly and properly compensating FRC.

### FIFTEENTH CAUSE OF ACTION

### (Declaratory Relief — Against All Counterclaim Defendants)

159.   FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

160.   An actual controversy has arisen concerning the parties' rights and duties.

161.   FRC seeks a judicial declaration that the Key Man Default occurred, entitling FRC to be substituted in as a party to the Global Distribution Agreement.

### SIXTEENTH CAUSE OF ACTION

### (Declaratory Relief – Copyright – Against Rancho and Cinq)

162.   FRC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

163.   As alleged herein, the Reverted Masters are owned 100% by FRC even though Rancho and Cinq continue to claim ownership.

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

164. An actual controversy has arisen concerning the parties' ownership of the Reverted Masters because Rancho and Cinq have heretofore refused to acknowledge that FRC owns the copyrights.

165. Declaratory relief is appropriate and necessary to establish that the Reverted Masters are owned by FRC.

166. Pursuant to 17 U.S.C Section 505, FRC requests that the Court award it its reasonable attorneys' fees when it prevails in this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaimants pray for judgment against Counterclaim Defendants Rancho, HTA and Cinq as follows:

1. That Plaintiff takes nothing by virtue of its Second Amended Complaint.

**On the First Cause of Action (Copyright Infringement and Rancho and Cinq):**

2. An award of Counterclaimants actual damages sustained as a result of Rancho and Cinq's infringing conduct, in an amount to be proven at trial;

3. An award of all profits of Rancho and Cinq attributable to their infringing exploitation of the Reverted Masters, including but not limited to revenues derived from the reproduction, distribution, licensing, and public performance thereof, to the extent not already taken into account in computing actual damages, in an amount to be proven at trial;

4. In the alternative, at Counterclaimants' election, an award of statutory damages pursuant to 17 U.S.C. § 504(c) for each act of infringement in an amount within the Court's discretion, and enhanced statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2);

5. A preliminary and permanent injunction pursuant to 17 U.S.C. § 502, enjoining Rancho, Cinq, and their respective officers, directors, employees, agents,

46

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

licensees, successors, assigns, and all persons acting in concert or participation with them, from reproducing, distributing, publicly performing, licensing, or otherwise exploiting the Reverted Masters or any portion thereof without Counterclaimants' express written authorization;

6. An order pursuant to 17 U.S.C. § 503 requiring the impoundment and destruction of all copies of the Reverted Masters in Rancho and Cinq's possession, custody, or control that were made or used in violation of Counterclaimants' exclusive rights;

7. An award of Counterclaimants' costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505; and

8. Such other and further relief as the Court deems just and proper.

**On the Second Cause of Action (Declaratory Relief – California Labor Code Section 2855 Against Counterclaim Defendant Rancho):**

9. A judicial declaration that Counterclaimants' personal services obligation to Rancho and all successors and assigns has been continuous since February 2, 2018 and expired no later than February 1, 2025 pursuant to California Labor Code § 2855;

10. A judicial declaration that all provisions of any agreement purporting to obligate Counterclaimants to render personal services after February 1, 2025 are void and unenforceable;

11. A judicial declaration that Counterclaimants are free from all personal services obligations to Rancho, and any other assignee or successor;

12. A judicial declaration that any choice of law or forum selection provisions purporting to require application of New York law or litigation in New York courts are void and unenforceable as applied to claims under California Labor Code § 2855;

47

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

**On the Third Cause of Action (Damages for Unlawful Assertion of Personal Services Obligation Beyond Statutory Limit Against Rancho):**

13.     Compensatory damages for lost free market value of Counterclaimants personal services since February 1, 2025, in an amount to be proven at trial;

**On the Fourth Cause of Action (Breach of Contract Against Rancho):**

14.     Compensatory damages in an amount to be proven at trial;

**On the Fifth Cause of Action (Breach of Fiduciary Duty Against Rancho):**

15.     Compensatory damages in an amount to be proven at trial;

16.     Disgorgement of all benefits obtained by Rancho through its breach of fiduciary duty;

17.     Punitive damages in an amount sufficient to punish Rancho and deter similar conduct;

**On the Sixth Cause of Action (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Rancho):**

18.     Compensatory damages in an amount to be proven at trial;

**On the Seventh Cause of Action (Tortious Interference with Prospective Business Advantage Against Rancho):**

19.     Compensatory damages including lost feature fees, royalties, streaming revenues, and career damages in an amount to be proven at trial;

20.     Punitive damages in an amount sufficient to punish Rancho and deter similar conduct;

**On the Eighth Cause of Action (Unfair Business Practices (Cal. Bus. & Prof. Code § 17200) Against Rancho):**

21.     Restitution of all amounts by which Rancho has been unjustly enriched.

22.     Preliminary and permanent injunctive relief compelling Rancho to

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

immediately submit the Feature Opportunities for approval to the extent they remain available, and prohibiting Rancho from further violations of § 17200;

**On the Ninth Cause of Action (Accounting Against Rancho):**

23.    A full and complete accounting of all monies received, held, and disbursed in connection with Counterclaimants' recordings and commercial activities;

24.    Payment of all amounts found due upon accounting;

**On the Tenth Cause of Action (Accounting Against HTA):**

25.    A full and complete accounting of all monies received, held, and disbursed in connection with Counterclaimants' recordings and commercial activities;

26.    Payment of all amounts found due upon accounting;

**On the Eleventh Cause of Action (Constructive Trust Against Rancho)**

**On all Causes of Action:**

27.    A declaration that Rancho holds in constructive trust for the benefit of Counterclaimants all royalties, revenues, proceeds, and other amounts wrongfully retained by Rancho that are properly owed to Counterclaimants;

28.    An order requiring Rancho to immediately disgorge and pay over to Counterclaimants all amounts held in constructive trust, together with all interest accrued thereon;

29.    An order imposing a constructive trust over any and all assets, accounts, or proceeds in Rancho's possession, custody, or control that are traceable to the wrongful retention of Counterclaimants' royalties and revenues, pending full disgorgement to Counterclaimants;

30.    A preliminary and permanent injunction restraining Rancho from dissipating, transferring, encumbering, or otherwise disposing of any assets subject to

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

the constructive trust pending resolution of this action;

31.    An award of prejudgment interest on all amounts wrongfully retained by Rancho from the date of wrongful retention to the date of judgment; and

32.    Such other and further relief as the Court deems just and proper;

**On the Twelfth Cause of Action (Constructive Trust Against HTA):**

33.    A declaration that HTA holds in constructive trust for the benefit of Counterclaimants all royalties, revenues, proceeds, and other amounts wrongfully retained by HTA that are properly owed to Counterclaimants;

34.    An order requiring HTA to immediately disgorge and pay over to Counterclaimants all amounts held in constructive trust, together with all interest accrued thereon;

35.    An order imposing a constructive trust over any and all assets, accounts, or proceeds in HTA's possession, custody, or control that are traceable to the wrongful retention of Counterclaimants' royalties and revenues, pending full disgorgement to Counterclaimants;

36.    A preliminary and permanent injunction restraining HTA from dissipating, transferring, encumbering, or otherwise disposing of any assets subject to the constructive trust pending resolution of this action;

37.    An award of prejudgment interest on all amounts wrongfully retained by HTA from the date of wrongful retention to the date of judgment; and

38.    Such other and further relief as the Court deems just and proper;

**On the Thirteenth Cause of Action (Unjust Enrichment Against Rancho):**

39.    A declaration that Rancho has been unjustly enriched by its retention of revenues, royalties, and other proceeds derived from the exploitation of Counterclaimants' masters;

40.    An order requiring Rancho to disgorge and pay over to

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

Counterclaimants all amounts by which Rancho has been unjustly enriched at Counterclaimants' expense, in an amount to be proven at trial;

41.    In the alternative, an order requiring Rancho to pay Counterclaimants restitution in the amount of all revenues, royalties, and proceeds Rancho has retained without adequate compensation to Counterclaimants, in an amount to be proven at trial;

42.    An award of prejudgment interest on all amounts Rancho has wrongfully retained from the date of wrongful retention to the date of judgment;

43.    An award of Counterclaimants' costs of suit incurred herein; and

44.    Such other and further relief as the Court deems just and proper;

**On the Fourteenth Cause of Action (Unjust Enrichment Against HTA):**

45.    A declaration that HTA has been unjustly enriched by its retention of revenues, fees, and other proceeds derived from the exploitation of Counterclaimants' live performances;

46.    An order requiring HTA to disgorge and pay over to Counterclaimants all amounts by which HTA has been unjustly enriched at Counterclaimants' expense, in an amount to be proven at trial;

47.    In the alternative, an order requiring HTA to pay Counterclaimants restitution in the amount of all revenues, fees, and proceeds HTA has retained without adequate compensation to Counterclaimants, in an amount to be proven at trial;

48.    An award of prejudgment interest on all amounts HTA has wrongfully retained from the date of wrongful retention to the date of judgment;

49.    An award of Counterclaimants' costs of suit incurred herein; and

50.    Such other and further relief as the Court deems just and proper;

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

**On the Fifteenth Cause of Action (Declaratory Relief – Against All Counterclaim Defendants):**

51.    A judicial declaration that a Key Man Default occurred under the Global Distribution Agreement upon the retirement of Jimmy Humilde from the music industry, entitling Counterclaimants to the rights and remedies specified therein, including the right to be substituted in as a direct party to the Global Distribution Agreement;

**On the Sixteenth Cause of Action (Declaratory Relief – Copyright – Against Rancho and Cinq):**

52.    A judicial declaration pursuant to 28 U.S.C. § 2201 that Counterclaimants are the sole and exclusive owner of all right, title, and interest in and to the Reverted Masters, including all copyrights therein and under the Copyright Act, 17 U.S.C. § 101 et seq., such ownership having vested in Counterclaimants automatically and without condition as of January 1, 2024, pursuant to Section 7.01(a) of the amended Rancho Agreement;

53.    A judicial declaration that Rancho holds no right, title, or interest of any kind in or to the Reverted Masters or the copyrights therein, and that any claim by Rancho to ownership of or rights in the Reverted Masters is without legal basis;

54.    A judicial declaration that Cinq holds no right, title, or interest of any kind in or to the Reverted Masters or the copyrights therein, and that any claim by Cinq to rights in the Reverted Masters is without legal basis as of January 1, 2024;

55.    A judicial declaration that Counterclaimants have the sole and exclusive right to reproduce, distribute, publicly perform, display, license, and otherwise exploit the Reverted Masters, and to authorize others to exercise those rights, to the exclusion of Rancho, Cinq, and all parties claiming through them;

56.    A judicial declaration that Rancho's and Cinq's continued assertion of

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

ownership or other rights in the Reverted Masters following January 1, 2024, constitutes a wrongful claim adverse to Counterclaimants' copyright interests;

57.    An order requiring Rancho and Cinq to execute, deliver, and record with the United States Copyright Office such assignments, transfers, and other instruments as may be necessary to confirm Counterclaimants' sole and exclusive ownership of the copyrights in the Reverted Masters;

58.    An award of Counterclaimants' reasonable attorneys' fees pursuant to 17 U.S.C. 505, if Counterclaimants prevail in this action against Rancho and Cinq whose conduct in continuing to assert ownership of the Reverted Masters following reversion was willful and in bad faith;

59.    An award of Counterclaimants' costs of suit incurred herein; and

60.    Such other and further relief as the Court deems just and proper.

**On All Causes of Action:**

61.    Pre-judgment and post-judgment interest at the maximum rate permitted by law;

62.    Costs of suit incurred herein;

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

63. Attorneys' fees to the extent permitted by contract, statute, or applicable law;

64. Such other and further relief as the Court deems just and proper.

DATED: April 17, 2026            FREUNDLICH LAW, APC

BY: */s/ Kenneth D. Freundlich*
Kenneth D. Freundlich (SBN: 119806)
Jonah A. Grossbardt (SBN 283584)
Hugh H. Rosenberg (SBN 360544)
*Attorneys for Defendants Fuerza Regida Corp.*
*Jesus Ortiz Paz, Samuel Jaimez, Khrystian*
*Ramos And Jose Garcia*

DATED: April 17, 2026

MOSLEY AND ASSOCIATES

BY: */s/ Walter Mosley*
Walter Mosley, Esq, (SBN: 244169)
*Co-Counsel for Defendants Fuerza Regida*
*Corp. Jesus Ortiz Paz, Samuel Jaimez,*
*Khrystian Ramos and Jose Garcia*

54

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**

## DEMAND FOR JURY TRIAL

Answering Defendants respectfully request a jury trial on all issues so triable, including without limitation, Plaintiff's claims and Answering Defendants' affirmative defenses and counterclaims herein.

Dated: April 17, 2026

FREUNDLICH LAW, APC


BY: */s/ Kenneth D. Freundlich*
Kenneth D. Freundlich (SBN: 119806)
*Attorneys for Defendants Fuerza Regida Corp.*
*Jesus Ortiz Paz, Samuel Jaimez, Khrystian*
*Ramos And Jose Garcia*

DATED: April 17, 2026

MOSLEY AND ASSOCIATES


BY: */s/ Walter Mosley*
Walter Mosley, Esq, (SBN: 244169)
*Co-Counsel for Defendants Fuerza Regida*
*Corp. Jesus Ortiz Paz, Samuel Jaimez,*
*Khrystian Ramos And Jose Garcia*

55

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND RESTATED AMENDED COUNTERCLAIMS**