UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RANCHO HUMILDE ENTERTAINMENT, LLC, *et al.*,

                    Plaintiffs and Counter-Defendants,

        v.

FUERZA REGIDA CORP*., et al.*,

                    Defendants and Counterclaimants.

Case No. 2:25-cv-10059-HDV-AJR

**ORDER GRANTING IN PART AND DENYING IN PART COUNTER-DEFENDANT RANCHO HUMILDE ENTERNTAINMENT, LLC AND THIRD-PARTY DEFENDANT HUMBLE TALENT AGENCY, INC.'S MOTION TO DISMISS [48]**

1

## I.    INTRODUCTION

The case is a multi-faceted dispute between a band and their record label.  The record label moves to dismiss several of the band's counterclaims under Rule 12(b)(6).  For the reasons discussed below, the Motion is granted in part and denied in part.

## II.    BACKGROUND

Jesus Ortiz Paz, Samuel Jaimez, Khrystian Ramos, and Jose Garcia are musicians in a band known as Fuerza Regida.  Second Amended Complaint ("SAC") [Dkt. 42] ¶ 3.  Rancho Humilde Entertainment, LLC ("Rancho") sued Fuerza Regida Corp. ("FRC"), Paz, Jaimez, Ramos, and Garcia (collectively, "Fuerza Regida" or "Artist") in September 2025.  Notice of Removal [Dkt. 1] at 6–7.[1]  The operative complaint alleges that Fuerza Regida engaged in unauthorized performances without approval from and compensation to Rancho, as required by the parties' contractual arrangements.  SAC ¶¶ 1, 10–31.  It asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, and an accounting.  *Id.* ¶¶ 32–51.

Fuerza Regida answered and counterclaimed.  *See* [Dkts. 1, 25, 35, 41, 44].  The counterclaims are asserted against Rancho, as well as Humble Talent Agency, LLC ("HTA"), and Cinq Music Group, LLC.  ("Counterclaims") [Dkt. 44] at 13–54.[2]  They allege that Rancho continues to assert contractual rights that have expired under California Labor Code section 2855 (which provides that a personal services contract cannot be enforced after more than seven years), and in so doing, is sabotaging Fuerza Regida's opportunities.  *Id.* ¶¶ 2–4.  They further aver that Rancho actually breached the relevant agreements between the parties, including by denying Fuerza Regida the reversion of certain valuable master recordings and by systematically failing to make required royalty payments.  *Id.* ¶ 5.

---

[1] Rancho initially filed its lawsuit in state court; the case was removed to this Court on October 20, 2025.  Notice of Removal.

[2] The Counterclaims asserted in Defendants' Amended Answer to First Amended Complaint, Amended Affirmative Defenses, and Fuerza Regida Corp.'s Amended Counterclaims [Dkt. 41] and Defendants' Answer to Second Amended Complaint, Affirmative Defenses, and Fuerza Regida Corp.'s Restated Amended Counterclaims [Dkt. 44] are substantially identical.  The Court will cite to the paragraph numbering in [Dkt. 44] and the exhibits to [Dkt. 41].

At issue here are the specifically-numbered counterclaims for: (2) declaratory relief against Rancho under section 2855, (3) damages for Rancho's "unlawful assertion of personal services obligation beyond statutory limit," (8) Rancho's unfair business practices under California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200, (11) constructive trust against Rancho, (12) constructive trust against HTA, (13) unjust enrichment against Rancho, and (14) unjust enrichment against HTA.  Counterclaims ¶¶ 95–103, 126–30, 145–58, Prayer.  Rancho and HTA (collectively, "Counter-Defendants") move to dismiss these seven causes of action under Rule 12(b)(6).  ("Motion") [Dkt. 48].  The matter is fully briefed.  *See* ("Opposition") [Dkt. 49]; ("Reply") [Dkt. 51].  The Court heard oral argument on June 18, 2026, and took the matter under submission.  ("Minutes") [Dkt. 57].

## III.    LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Determining whether a complaint satisfies this standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  In making this determination, allegations of material fact should be construed in the light most favorable to the plaintiff.  *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted).

On a Rule 12(b)(6) motion, a court is generally limited to considering the pleadings, matters attached to or incorporated by reference into the pleadings, and matters subject to judicial notice. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Documents may be incorporated by reference into a pleading if (1) the pleading refers to the document, (2) it is central to the claim, and (3) no party questions its authenticity.  *Corinthian Colleges*, 655 F.3d at 999 (citation omitted).

3

Judicial notice may be taken of matters of public record, but not of facts favorable to the moving party that could be subject to reasonable dispute. *Id.* (citation omitted).

## IV.    DISCUSSION

### A.    California Labor Code Section 2855

Fuerza Regida's second and third causes of action are grounded in California Labor Code section 2855. Counterclaims ¶¶ 95–103. That statute provides, in relevant part, that "a contract to render personal service . . . may not be enforced against the employee beyond seven years from the commencement of service under it." Cal. Labor Code § 2855(a).[3]

The relevant contracting history between the parties is as follows.[4] On February 2, 2018, Rancho (and Lumbre Music) entered into an "Exclusive Recording Agreement" with Paz, Jaimez, Ramos and Garcia for an initial three-year term, with an option to extend. Counterclaims ¶ 22, Ex. 1 ("2018 Recording Agreement") [Dkt. 41-1].

At some point, disputes arose with respect to the 2018 Recording Agreement. Counterclaims ¶ 25. Effective December 30, 2021, FRC and Rancho entered into an "Exclusive Recording and Participation Agreement." *Id.* ¶ 26, Ex. 2 ("2021 Recording Agreement") [Dkt. 41-2].[5] Each of the individual artists separately executed inducement letters binding them to the 2021 Recording Agreement. Counterclaims ¶ 26; 2021 Recording Agreement at 30–33. Effective January 1, 2022,

---

[3] Where the personal services contract is for the production of phonorecords, the employee "may not invoke the provisions of subdivision (a) without first giving written notice to the employer . . . specifying that the employee from and after a future date certain specified in the notice will no longer render service under the contract[.]" Cal. Labor Code § 2855(b)(1). If the employee is required to produce "a specified quantity of the phonorecords and fails to render all of the required service prior to the date specified in the notice . . ., the party damaged by the failure shall have the right to recover damages for each phonorecord as to which that party has failed to render service in an action . . . commenced within 45 days after the date specified in the notice." *Id.* § 2855(b)(3).

[4] The Court draws the facts from the Counterclaims, and accepts all of Fuerza Regida's plausible allegations as true, as it must at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] The 2021 Recording Agreement provided for a $300,000 signing bonus and contained a complete integration and merger clause superseding all prior agreements and understandings on its subject matter. 2021 Recording Agreement ¶¶ 5(a), 20.

Rancho and Fuerza Regida entered into a "Settlement and Release Agreement." Counterclaims ¶ 27, Ex. 3 ("2022 Settlement Agreement") [Dkt. 41-3]. The 2022 Settlement Agreement recites that the term of the 2018 Recording Agreement "is hereby terminated" and that "each Party shall be deemed to have fulfilled all obligations" under that agreement. 2022 Settlement Agreement ¶ 1(a).[6]

In August 2022, the parties executed, contemporaneously with a Global Distribution Agreement with Sony Music Entertainment US Latin LLC, an amendment to the 2021 Recording Agreement that, among other things, extended the term of the 2021 Recording Agreement through at least 2027. Counterclaims ¶¶ 33, 49, Ex. 4 ("2022 Amendment") [Dkt. 41-4].[7]

Fuerza Regida alleges that it "was never free from a binding personal services obligation—not for a single day, not for a single hour—between the 2018 Recording Agreement" and the 2021 Recording Agreement. Counterclaims ¶ 29. "At no point . . . was Artist released from their existing contractual obligations, permitted to seek or negotiate alternative employment, or afforded any meaningful opportunity to exercise [] freedom of contract . . . ." *Id.* ¶ 30. Fuerza Regida contends that its personal service obligations to Rancho have been "continuous and uninterrupted since February 2, 2018," and that their maximum enforceable term "expired no later than February 1, 2025." *Id.* ¶ 97. As they see it, Rancho is impermissibly seeking to enforce over eight years (so far) and potentially up to nine years of exclusive personal service. *Id.* ¶¶ 33–34.

---

[6] It also establishes an independent $1,800,000 Settlement Sum, 2022 Settlement Agreement ¶ 4; contains mutual general releases, *id.* ¶ 5; and contains a voluntariness and independent counsel recital, *id.* ¶ 12(a)(ii).

[7] The Counterclaims describe the term as extending through at least April 2027. Counterclaims ¶ 33. The 2022 Amendment provides: "The term . . . shall commence on the Effective Date (December 30, 2021) and shall continue through the later of (a) the last day of the calendar month that is five (5) years and eight (8) months after the Effective Date, and (b) the later of (x) the last day of the calendar month during which you complete Delivery of the Sixth (6th) Album or (y) the last day of the calendar month during which you complete Delivery of the Live Product as defined hereunder." 2022 Amendment ¶ 1. The Court calculates (a) as August 31, 2027, and so the term as extending at least through then.

The 2022 Amendment also recited additional consideration to Fuerza Regida (in the form of a monetary advance) and that the parties were "advised to seek independent legal counsel . . . and either did or decided to waive such right." 2022 Amendment ¶¶ 16, 29.

### 1.   Declaratory Relief

Fuerza Regida's second cause of action seeks a declaration that its personal service obligations are expired, that provisions of the agreements purporting to obligate it to render services after February 1, 2025 are void and unenforceable, and that Rancho's continued assertion of rights to its services is unlawful.  Rancho seeks to dismiss this claim on two grounds: (1) that it is duplicative of Fuerza Regida's fourth affirmative defense, and (2) that it fails on the merits because the 2021 Recording Agreement (and the 2022 Amendment thereto) is a separate contract from the 2018 Recording Agreement and the terms of service under the two should not be aggregated for purposes of section 2855's seven-year limit.  Motion at 7–11.

The Court declines the invitation to dismiss on the first ground.  As Fuerza Regida points out, "[a]n affirmative defense is reactive.  It is invoked to defeat a specific claim asserted by a specific plaintiff in a specific action.  A declaratory judgment is proactive."  Opposition at 9.  Rancho's claims to which section 2855 serves as Fuerza Regida's affirmative defense could be resolved without the Court ever actually ruling on the section 2855 issue.  Fuerza Regida has much more control over a counterclaim for declaratory judgment, and can ensure that the case reaches final judgment on that specific issue.  And the distinction is not merely academic.  *Id.* at 10.  A clear declaratory judgment in Fuerza Regida's favor could be shown to third parties to help prevent any further interference by Rancho.

Rancho's arguments that such a judgment would not bind third parties or would be an advisory opinion are misguided.  *See* Motion at 8; Reply at 2.  The point is not that a declaratory judgment would bind Sony or any other third-party.  The point is that Fuerza Regida could show it to third parties to, for example, reassure them that they can proceed with negotiations and opportunities with Fuerza Regida without awaiting Rancho's participation or consent.  And such use would not render the judgment "advisory."  The prohibition against federal courts issuing advisory opinions comes from Article III of the Constitution, which confines their jurisdiction to "Cases" and "Controversies."  *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 378 (2024). A similar limitation is incorporated into the Declaratory Judgment Act.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120, 126–27 (2007).  Here, "there is a substantial controversy,

between parties [Fuerza Regida and Rancho] having adverse legal interests, of sufficient immediacy and reality," so a declaratory judgment would not be an advisory opinion. *Id.* at 127 (citation omitted).

On the merits, the parties vigorously debate, with citations to competing cases, how to apply section 2855 where, as here, parties enter into a new agreement before seven years have run on the first one. Rancho Humilde, relying on *Manchester v. Arista Records, Inc.*, No. 81-cv-2134-RJK, 1981 U.S. Dist. LEXIS 18642 (C.D. Cal. Sept. 15, 1981) and *Twentieth Century Fox Film Corp. v. Netflix, Inc.*, No. SC126423 (L.A. Super. Ct. June 5, 2019), argues that subsequent agreements restart the seven-year clock "unless (i) the new contract was formed at or near the time the earlier one was formed, (ii) the contracts 'appear to have been entered into to avoid the application of § 2855,' and (iii) the later instrument lacks materially different terms, consideration, or integration." Motion at 9 (citing *Manchester*, 1981 U.S. Dist. LEXIS 18642, at *18–20). Fuerza Regida, relying on *de la Hoya v. Top Rank, Inc.*, Nos. 00-cv-9230-WMB, 00-cv-10450-WMB, 2001 WL 34624886 (C.D. Cal. Feb. 6, 2001) and the legislative history of section 2855, argues that "[a] new seven years is not started under the statute unless the new agreement is struck while the employee is free from any existing contract, able to consider competitive offers and able to negotiate for his true value in the marketplace." Opposition at 12 (quoting *de la Hoya*, 2001 WL 34624886, at *12).

These trial court cases are not binding, and this Court has been unable to find any direct authority from the Ninth Circuit that would resolve this central question as a matter of law.[8] And they appear to describe inconsistent ways of analyzing the issue.[9] Fortunately, the Court need not

---

[8] The Ninth Circuit appears to have cited section 2855 exactly once, in the factual background of a case that did not go on to discuss the substance of that section. *U.S. ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 829 (9th Cir. 1993). The California Supreme Court has cited it a handful of times, but has not addressed this issue.

[9] The parties' briefs present the two lines of cases as alternatives. *See, e.g.*, Opposition at 17 ("[T]he legislative record . . . resolves the choice between the *Manchester* framework and *De La Hoya*'s freedom standard."); Reply at 3 ("[T]he proper analytical framework is *Manchester*, not *De La Hoya*."). Counsel for Fuerza Regida maintained that position at oral argument, while counsel for Rancho Humilde argued that the cases could all be squared. The Court reads the cases the first way.

engage in its own analysis of the statute and decide between these cases at this stage, because Fuerza Regida's counterclaim survives the present Motion either way.

If *de la Hoya* is the correct interpretation of the statute, then Fuerza Regida has certainly pled enough to survive a motion to dismiss. It pleads that it "was never free from a binding personal services obligation—not for a single day, not for a single hour." Counterclaims ¶ 29. This allegation is plausible, and, contra Rancho Humilde's intimation, *see* Motion at 9 n.1; Reply at 2, is consistent with the contracts themselves. The language terminating the 2018 Recording Agreement was contained in the 2022 Settlement Agreement, which became effective January 1, 2022, *after* the parties had already entered into the 2021 Recording Agreement on December 30, 2021. 2021 Recording Agreement at 1; 2022 Settlement Agreement ¶ 1(a). So "[i]n fact, the Artist was [briefly] simultaneously under two exclusive personal services obligations at the same time by the same label." Counterclaims ¶ 29.

Even if *Manchester* is the correct framework, this Court cannot conclude at the pleading stage that Fuerza Regida is not entitled to the declaratory judgment it seeks. Neither *Manchester* nor *Netflix* were decided at the pleading stage—they were motions for summary judgment. *Manchester*, 1981 U.S. Dist. Lexis 18642, at *2; *Netflix*, slip op. at 1. And the analysis that *Manchester* prescribes is fact-bound:

> *The better course is to consider the circumstances surrounding the formation of the new contract in each situation.* If the new contract was entered into at or near the time of formation of the earlier contract, and if the two contracts appear to have been entered into to avoid the application of § 2855 to a single agreement, then they should be considered a single contract for purposes of § 2855. However, if the latter contract was entered into toward the end of the first contract, it should be treated as a separate agreement for purposes of § 2855. *Each employment situation will necessarily be interpreted according to its unique facts.* The interpretation of the two contracts should be made in light of the policy consideration underlying § 2855 to protect employees, rather than by principles of formal contract law.
>
>        \*      \*      \*
>
> The 1976 contract was entered into after the 1973 agreement was partially completed. It was an integrated agreement that differed in several material respects from the 1973 agreement. It did not have a forum selection clause; it materially altered the royalty provisions; and it was entered into to pay the debt that Manchester owed to Philips and

> thus was supported by different consideration. The only significant factor that supports treating the two contracts as one is that the 1976 agreement is an option contract that Arista could exercise only if it had exercised all of its options under the 1973 contract.

1981 U.S. Dist. Lexis 18642, at *18–20 (emphasis added).[10]  Although the Court has the contracts and the timeline of when they were entered into, the Court does not now have all of the facts regarding the circumstances of their negotiation in order to determine whether there was an intent to avoid the application of section 2855.  *See* Opposition at 18–19.

The Court thus denies the Motion with respect to Fuerza Regida's claim for declaratory relief as to the parties' rights under section 2855.

### 2.    Damages

Fuerza Regida's third cause of action seeks "damages for [the] unlawful assertion of personal services obligation[s] beyond [the] statutory limit."  Counterclaims ¶¶ 100–03.  Rancho moves to dismiss this claim on the bases that (1) section 2855 creates no private right of action for damages, and (2) that this cause of action is wholly duplicative of other damages claims.  Motion at 11–14.

As to the first argument, Fuerza Regida concedes that "[s]ection 2855 is not a claim" and "contains no express damages provision."  Opposition at 21–22.  This is a sufficient basis on which to dismiss it.

Fuerza Regida attempts to save the claim by arguing that "a party knowingly asserting void legal rights to interfere with another party's freedom to contract" is tortious "regardless of what statute renders those rights void" and regardless of the "label" on the pleading.  Opposition at 22.  In doing so, they point to causes of action for intentional interference with prospective economic advantage and breach of the implied covenant of good faith and fair dealing.  *Id.* at 23–24.  The problem is that this runs squarely into Rancho's second argument regarding duplicity.  Fuerza Regida *already pleads* causes of action for tortious interference with prospective business advantage and breach of the implied covenant of good faith and fair dealing, including based on Rancho

---

[10] Rancho Humilde's distillation of this language into the three-element test quoted above, *see* Motion at 9, is an over-simplification at best and a mischaracterization at worst.

"[c]ontinuing to assert rights to Counterclaimants' personal services after the Section 2855 limit had expired, in bad faith and without reasonable basis."  Counterclaims ¶¶ 114–25.

The Court therefore grants the motion to dismiss the third cause of action.  This dismissal is without leave to amend, "because section 2855 does not supply a private damages remedy that amendment can manufacture, and because any conduct-based damages theory would remain subsumed within the FRC Counterclaimants' other claims."  Motion at 21.

**B.      Unfair Competition Law**

Fuerza Regida's eighth cause of action asserts a claim against Rancho under the UCL, Cal. Bus. & Prof. Code § 17200.  Counterclaims ¶¶ 126–30.  More particularly, Fuerza Regida alleges that Rancho's unlawful assertion of rights to Fuerza Regida's personal services beyond the seven-year limit established by section 2855 and Rancho's unfair and deliberate withholding of feature opportunities for litigation advantage are unlawful and unfair business practices.  *Id.* ¶ 128.

Rancho moves to dismiss this claim for three reasons: (1) section 2855 supplies no predicate violation; (2) the UCL is not available to a corporate entity for private contract disputes that do no not injure consumers, competitors, or the public; and (3) Fuerza Regida has not pled the absence of an adequate remedy at law.  Motion at 14–17.  The Court agrees with Rancho's second argument, and thus need not address the others.

California's UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  Its "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  As a result, "a corporate plaintiff may not rely on the UCL" to seek relief in an action "based on contracts not involving either the public in general or individual consumers who are parties to the contract." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007).  Federal courts in this district and throughout California have relied on *Linear Tech* to foreclose UCL claims of "non-competitor, business-to-business disputes," *IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. 13-cv-09026-GW-AJWx, 2015 WL 12843822, at *17–18 (C.D. Cal. Jan. 29, 2015), that "lack[] any connection to the protection of fair competition or the general public," *Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1154 (E.D. Cal. 2013).  *See also ChromaDex,*

*Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 975 (C.D. Cal. 2017); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012).

Fuerza Regida is not Rancho's competitor. FRC is a corporation. And its alleged UCL claim—regarding Rancho's asserted rights to the Artist's personal services and withholding of feature opportunities for litigation advantage—do not affect the public. Fuerza Regida identifies a "public interest in artists' freedom from involuntary servitude" and "the broader market for entertainment services," including Fuerza Regida's "millions of fans" and others interested in the commercially and culturally significant opportunities that Rancho blocked. Opposition at 26. But this does not change the fact that the dispute here is essentially a private business dispute that does not implicate the kind of consumer or public interest that the UCL protects. This claim is accordingly dismissed, without leave to amend.[11]

### C.    Constructive Trust

Fuerza Regida's eleventh and twelfth causes of action request "the imposition of a constructive trust" over "royalties" and "proceeds" in Rancho and HTA's possession that allegedly belong to Fuerza Regida. Counterclaims ¶¶ 145–50, Prayer ¶¶ 27–38. Counter-Defendants raises two arguments for dismissal of these claims, and the Court agrees with both.

First, a constructive trust is an equitable *remedy*, not a separate, substantive cause of action. *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 42th 1018, 1023 n.3 (2000); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 398 (2007). Fuerza Regida recognizes this, Opposition at 28, which damns its claim. But it argues that the Court should not dismiss its claims "for imperfect statement of legal theory" and should "construe" these allegations "as prayers for constructive trust relief in connection with the surviving First (Copyright Infringement), Fourth (Breach of Contract), Fifth (Breach of Fiduciary Duty), and Sixteenth (Declaratory Relief – Copyright)" claims. Opposition at 28.

---

[11] Fuerza Regida's Opposition does not explain how it could re-plead the eighth cause of action to avoid its status as a corporate claimant asserting only private-contract grievances. *Compare* Motion at 21 *with* Opposition at 30.

Second, the Counterclaims do not identify a "*res* (property or some interest in property)," as is required to impose a constructive trust. *PCO*, 150 Cal. App. 4th at 398. The allegations under the eleventh and twelfth causes of action speak generally of "royalties" and "proceeds," and the associated prayer for relief also refers broadly to "royalties, revenues, proceeds, and other amounts." Counterclaims ¶¶ 145–50, Prayer ¶¶ 27–38. In their Opposition, Fuerza Regida claims that the *res* at issue here is their reverted masters. Opposition at 27–28. But the pleading does not say that.

The eleventh and twelfth causes of action are thus dismissed. Fuerza Regida will be permitted leave to amend to, if it desires to do so, identify a specific *res* and clarify that the constructive trust is a request for relief associated with other, substantive causes of action.

### D.    Unjust Enrichment

Fuerza Regida's thirteenth and fourteenth causes of action assert claims for "unjust enrichment" against Rancho for the "active exploitation of FRC's masters" and against HTA for the "active exploitation of Artist's live performances" "without properly or adequately accounting to and paying what is owed to FRC." Counterclaims ¶¶ 151–58.

Counter-Defendants argue, and Fuerza Regida concedes, that unjust enrichment is not an independent cause of action. Motion at 19; Opposition at 29; *see, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). Rather, it is "synonymous with restitution," a cause of action which may have "several potential bases." *Durell*, 183 Cal. App. 4th at 1370. These claims might thus be better understood as "quasi-contract requests for restitution." Motion at 20; *see also* Opposition at 29. But they are not sufficiently pled as such. *See Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003).

Further, Counter-Defendants argue that such quasi-contract claims cannot lie where an enforceable express contract governs the same subject matter, and would be duplicative of Fuerza Regida's causes of action for breach of contract and for accounting based on the same alleged retention of royalties and live-performance revenues. Motion at 20; *see* Counterclaims ¶¶ 131–44. Fuerza Regida "acknowledges" the "tension" between the express contract bar and a quasi-contract theory, but seeks to plead its unjust enrichment claims in the alternative, in case "the Court ultimately finds that the express contracts are void, unenforceable, or inapplicable to certain conduct

12

or time periods." Opposition at 29. But that is not how these claims are pled. "Although a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement [and claims, such as quasi-contract, predicated on that absence], that is not what occurred here. Instead, [Fuerza Regida's] breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012), *as modified on denial of reh'g* (Feb. 24, 2012). To the contrary, Fuerza Regida's Thirteenth Cause of Action explicitly refers to the "Rancho Recording Agreement." Counterclaims ¶ 152. Fuerza Regida "is therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment." *Klein*, 202 Cal. App. 4th at 1389–90. Indeed, anything different would be flatly contradictory to the essential nature of its current (contract-based) pleading, and therefore cannot be pled in the alternative.

## V.    CONCLUSION

The Motion is granted in part and denied in part. Fuerza Regida's Second Counterclaim survives. The Third, Eighth, Thirteenth, and Fourteenth Counterclaims are dismissed without leave to amend. The Eleventh and Twelfth Counterclaims are dismissed with leave to amend.

Dated: July 9, 2026

_____
Hernán D. Vera
United States District Judge

13